PEOPLE v TUTTLE

Docket No. 312364. Submitted October 8, 2013, at Detroit. Decided
January 30, 2014, at 9:15 a.m. Leave to appeal granted, 496 Mich
___.

Robert Tuttle was charged in the Oakland Circuit Court with 3
counts of delivering marijuana, 1 count of manufacturing mari-
juana, 1 count of possessing marijuana with the intent to deliver it,
and two counts of possession of a firearm during the commission of
a felony. Defendant moved to dismiss the charges on the bases that
he was entitled to immunity under § 4 of the Michigan Medical
Marihuana Act (MMMA), MCL 333.26424, and dismissal pursuant
to the affirmative defense set forth in § 8 of the MMMA, MCL
333.26428. The court, Michael D. Warren, Jr., J., held that defen-
dant was not entitled to immunity under § 4 and denied defen-
dant's requests for dismissal under § 8 or to present a § 8 defense
at trial. Defendant was a registered primary caregiver for two
medical marijuana patients to whom he was connected through
the state's MMMA registration process. Defendant was also a
medical marijuana patient with a valid registry identification card.
On three occasions, defendant sold marijuana to a confidential
informant for the Oakland County Sheriff's Office. The informant
had supplied defendant with various documents demonstrating
that he was a qualifying patient under the MMMA, but defendant
never became connected to the informant as a caregiver through
the state's registration process before selling him marijuana. At
defendant's home, the police seized 33 marijuana plants, 38 grams
of dried marijuana, and several firearms. The Court of Appeals
denied defendant's application for leave to appeal, and defendant
sought leave to appeal in the Supreme Court. In lieu of granting
leave to appeal, the Supreme Court remanded the case to the
Court of Appeals for consideration as on leave granted. 493 Mich
950 (2013).

The Court of Appeals held:

1. Under MCL 333.26424(a), a qualifying patient who holds a
registry identification card is entitled to immunity from prosecu-
tion. To be entitled to immunity, the patient may not possess more
than 2.5 ounces of usable marijuana and 12 marijuana plants.
MCL 333.26424(b) contains a parallel provision that applies to

registered primary caregivers. Section 4 immunity, however, does not extend to patient-to-patient transfers of marijuana. Nor does it extend to a caregiver who transfers marijuana for any purpose other than to alleviate the condition or symptoms of a specific patient with whom the caregiver is connected through the state's registration process. Under MCL 333.26424(d), qualifying patients and caregivers are presumed to be engaged in the medical use of marijuana in accordance with the MMMA if they possess a registry identification card and an amount of marijuana that does not exceed the amount allowed under the act. The presumption may be rebutted if the prosecution provides evidence that conduct related to marijuana was not for the purpose of alleviating a qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition in accordance with the act. In this case, defendant conceded that he was not entitled to § 4 immunity for the sales of marijuana to the confidential informant, but claimed that the remaining charges should be dismissed under § 4 because he was entitled to the presumption in § 4(d). However, the evidence that defendant sold marijuana to a patient with whom he was not connected through the state's registration process meant that defendant was not acting in accordance with the act, rebutting the presumption with regard to all of defendant's conduct involving marijuana. The trial court correctly held that defendant was not entitled to immunity under § 4.

2. Under MCL 333.26428(a), a defendant may assert the medical purpose for using marijuana as a defense in any prosecution involving marijuana. For the defense to be successful, the defendant must prove (1) the existence of a bona fide physician-patient relationship, (2) that the patient and the patient's caregiver, if any, were collectively in possession of a quantity of marijuana that was not more than reasonably necessary to ensure the uninterrupted availability of marijuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's condition, and (3) the patient and the caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marijuana or marijuana paraphernalia to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's condition. Possession of a registry identification card, without more, does nothing to address the medical requirements of § 8 and is not sufficient to demonstrate compliance with the MMMA. It offers no proof of the existence of an ongoing relationship between a patient and a physician as mandated by § 8(a)(1). It does not prove that the caregiver is aware of how much marijuana the patient has been prescribed or for how

long the patient is supposed to use the drug as mandated by § 8(a)(2). It does not establish that the marijuana provided by the caregiver is actually being used by the patient for medical reasons as mandated by § 8(a)(3). In this case, the trial court incorrectly ruled that defendant had satisfied MCL 333.26428(a)(3), citing the testimony of the two patients to whom defendant was connected through the state's registration process. But any analysis of § 8(a)(3) needs to incorporate every patient possibly using the marijuana at issue, including, in this case, defendant and the confidential informant, and defendant failed to testify that he used the marijuana found in his home to treat a serious or debilitating medical condition or its symptoms. Nonetheless, the court correctly ruled that defendant had otherwise failed to meet his burden under § 8(a) and that he was, therefore, not entitled to have the case dismissed under that section, nor was he permitted to assert the § 8 defense at trial.

Trial court's ruling regarding MCL 333.26428(a)(3) reversed, but trial court's order denying defendant's motion to dismiss the case and precluding defendant from asserting a § 8 defense at trial affirmed.

JANSEN, J., concurred in the result only.

1. CONTROLLED SUBSTANCES — MICHIGAN MEDICAL MARIHUANA ACT — PRESUMPTIONS — MEDICAL USE OF MARIHUANA — REBUTTAL.

Under MCL 333.26424(d) of the Michigan Medical Marihuana Act, qualifying patients and caregivers are presumed to be engaged in the medical use of marijuana in accordance with the act if they possess a registry identification card and an amount of marijuana that does not exceed the amount allowed under the act; the presumption may be rebutted if the prosecution provides evidence that conduct related to marijuana was not for the purpose of alleviating a qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition in accordance with the act; an admission by a defendant that the defendant acted outside the parameters of the act in one regard rebuts the presumption with regard to all conduct involving marijuana.

2. CONTROLLED SUBSTANCES — MICHIGAN MEDICAL MARIHUANA ACT — AFFIRMATIVE DEFENSES — MEDICAL USE.

Under MCL 333.26428(a), a defendant may assert the medical purpose for using marijuana as a defense in any prosecution involving marijuana; for the defense to be successful, the defendant must prove (1) the existence of a bona fide physician-patient relationship, (2) that the patient and the patient's caregiver, if any, were collectively in

possession of a quantity of marijuana that was not more than reasonably necessary to ensure the uninterrupted availability of marijuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's condition, and (3) the patient and the caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marijuana or marijuana paraphernalia to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's condition; any analysis of whether the patient and the caregiver, if any, were engaged in the actual medical use of marijuana needs to incorporate every patient possibly using the marijuana at issue.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden*, Appellate Division Chief, and *Tanya L. Nava*, Assistant Prosecuting Attorney, for the people.

*Daniel J. M. Schouman, PLC* (by *Daniel J. M. Schouman*), for defendant.

Before: SAAD, P.J., and SAWYER and JANSEN, JJ.

SAAD, P.J. Defendant appeals the trial court's order that (1) held that he was not entitled to immunity under § 4 of the Michigan Medical Marihuana Act (MMMA),[1] (2) denied defendant's request for dismissal under § 8 of the MMMA, and (3) denied his request to present the § 8 defense at trial. For the reasons set forth in this opinion, we affirm in part and reverse in part.

### I. NATURE OF THE CASE

Defendant was arrested for selling marijuana to a confidential informant of the Oakland County Sheriff's

---

[1] The MMMA uses the variant "marihuana." Throughout this opinion, we use the more common spelling "marijuana" unless quoting from the MMMA or cases that use the variant spelling.

Office. He was subsequently charged with the sale and production of marijuana and possession of a firearm during the commission of a felony (felony-firearm). Defendant holds a valid registry identification card under the MMMA, MCL 333.26421 *et seq*. He claims that possession of the card, without more, entitles him to (1) immunity from prosecution under § 4 of the MMMA, MCL 333.26424, for the charges not relating to the sale of marijuana, and (2) an affirmative defense under § 8 of the MMMA, MCL 333.26428, for all the charges. In addition, defendant argues that the testimony of his medical marijuana patients allows him to assert the § 8 affirmative defense. The trial court rejected both arguments and held that defendant was not entitled to immunity under § 4 and that he had not presented the requisite evidence to make an affirmative defense under § 8.

We uphold the trial court, and expand our analysis to include defendant's arguments regarding (1) his possession of a registry identification card, and (2) the testimony of his medical marijuana patients. To adopt defendant's MMMA interpretation would subvert the purposes of the statute. It provides a limited "exception to the Public Health Code's prohibition on the use of controlled substances . . . ." *People v Bylsma*, 493 Mich 17, 27; 825 NW2d 543 (2012). This exception is intended to allow Michiganders "suffering from serious or debilitating medical conditions or symptoms" the use of marijuana to help treat and alleviate their symptoms. *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012). We therefore reject defendant's arguments and hold that the trial court did not abuse its discretion when it (1) ruled that defendant was not entitled to immunity from criminal prosecution under § 4, (2) denied defendant's request for dismissal under § 8, and (3) held that defendant could not present the § 8 defense at trial.

## II. FACTS AND PROCEDURAL HISTORY

On three occasions in January 2012, defendant sold marijuana to a confidential informant of the Oakland County Sheriff's Office. Defendant originally met the informant on a website that connects medical marijuana patients with marijuana growers.[2] Before the sales, defendant met with the confidential informant in Waterford and asked him for various documents to demonstrate that he was a "qualifying patient"[3] under the MMMA. Defendant did not ask the confidential informant (nor did the confidential informant provide) information on how much marijuana he required to treat his debilitating medical condition, or how long this treatment should continue.

The Oakland County Sheriff's Office arrested defendant shortly after the third sale. The office also obtained a warrant to search defendant's home. At the house, a detective recovered 33 marijuana plants and 38 grams of dried marijuana from a locked garage and shed. The police also discovered a cache of firearms (including an AK-47) in a gun safe in defendant's basement.

The state subsequently charged defendant with numerous counts related to marijuana manufacture and delivery and possession of a firearm during the commis-

---

[2] Defendant himself is a medical marijuana patient with a state-issued registry identification card. He also is a registered "caregiver" for two other qualifying patients. MCL 333.26423(h) defines "primary caregiver" and "caregiver" as "a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has not been convicted of any felony within the past 10 years and has never been convicted of a felony involving illegal drugs or a felony that is an assaultive crime . . . ."

[3] MCL 333.26423(i) defines "qualifying patient" and "patient" as "a person who has been diagnosed by a physician as having a debilitating medical condition."

sion of a felony.[4] After defendant was bound over to the circuit court, he moved to dismiss the charges based on possession of marijuana in his home and the related felony-firearm charges under § 4 of the MMMA, which grants immunity from prosecution. The defendant asserted that § 4 allowed him to possess up to 7.5 ounces of dried marijuana and 36 marijuana plants. Defendant also argued that the remaining charges should be dismissed under the affirmative defense provision in § 8 of the MMMA because he possessed only an amount of marijuana "reasonably necessary" to treat him and his patients. Defendant also requested an evidentiary hearing under § 8.

The prosecution responded to defendant's motion, and conceded that defendant complied with the "quantity and storage parameters" of § 4. But the prosecution asserted that defendant's conduct rebutted the presumption that he was engaged in the "medical use of marihuana" under § 4(d) of the MMMA. Defendant sold marijuana to a patient, the confidential informant, and was connected to that patient in a method outside the state's registration process, contravening § 4(b)(1), which mandates that caregivers be connected with patients through "the department's registration process." MCL 333.26424(b)(1). The prosecution also noted that the marijuana sold to the confidential informant came from the same stockpile used to supply defendant's legitimate medical marijuana patients. Finally, the prosecution noted that defendant's sale to the confidential informant violated the regulations in § 4(a) for medical marijuana patients because this Court has

---

[4] Counts I-III relate to the sale of marijuana to the confidential informant—one charge for each of the sale dates. Counts IV and V concern possession of the 38 grams of loose marijuana and a related felony-firearm charge. Counts VI and VII relate to the growing of 33 marijuana plants and a related felony-firearm charge.

ruled that patient-to-patient sales of marijuana do not fall under the MMMA.[5] The prosecution acceded to defendant's request for an evidentiary hearing.

The trial court agreed with the prosecution and denied defendant's motion to dismiss under § 4 before the evidentiary hearing. It held that the prosecution had rebutted the presumption of compliance with the MMMA referred to in § 4(d).

At the evidentiary hearing, a detective and the confidential informant offered testimony. Defendant's two registered patients testified as well. After it heard this evidence, the trial court denied defendant's request for dismissal under § 8. It also held that defendant was precluded from presenting the § 8 affirmative defense at trial because he had failed to provide evidence of every element required under that section. Specifically, the court noted that the physician statements provided by defendant did not actually state that the respective physicians completed a full assessment of each patient's medical history and current medical condition. It was also troubled by the number of plants found in defendant's home, stating that "33 plants certainly could be viewed to be significantly beyond the required quantity" to treat his patient's conditions. However, the trial court did find evidence that defendant was actually engaged in the possession and cultivation of marijuana for medical purposes, citing the testimony of defendant's two certified patients.

---

[5] *Michigan v McQueen*, 293 Mich App 644, 675; 811 NW2d 513 (2011). This case was subsequently affirmed on other grounds by our Supreme Court. *Michigan v McQueen*, 493 Mich 135; 828 NW2d 644 (2013). However, the Supreme Court agreed that MMMA § 4 did not provide immunity for patient-to-patient sales. *McQueen*, 493 Mich at 156. We will return to the Supreme Court's interpretation of § 4 later in this opinion.

In September 2012, defendant sought leave to appeal in this Court, which denied leave.[6] Defendant then sought leave to appeal in the Michigan Supreme Court, which entered an order remanding the case to this Court for consideration as on leave granted.[7] Defendant appeals the ruling of the trial court, arguing that Counts IV through VII of the charges against him (the possession and felony-firearm charges) should be dismissed under the § 4 immunity provisions. He also argues that he is entitled to dismissal of all charges under the § 8 affirmative defense. In the alternative, he argues that he should be permitted to raise the § 8 affirmative defense at trial.

### III. STANDARD OF REVIEW

A trial court's decision on a motion to dismiss is reviewed for an abuse of discretion. *Bylsma*, 493 Mich at 26. "A trial court's findings of fact may not be set aside unless they are clearly erroneous." *Id.* A finding is clearly erroneous " 'if the reviewing court is left with a definite and firm conviction that the trial court made a mistake.' " *Id.*, quoting *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). Questions of statutory interpretation, including interpretation of the MMMA, are reviewed de novo. *Kolanek*, 491 Mich at 393.

### IV. ANALYSIS

#### A. SECTION 4 IMMUNITY

Only some of the multiple subsections of § 4 are relevant to this case: §§ 4(a), 4(b), and 4(d). Under § 4(a), qualifying patients who hold registry identifica-

---

[6] *People v Tuttle*, unpublished order of the Court of Appeals, entered October 11, 2012 (Docket No. 312364).

[7] *People v Tuttle*, 493 Mich 950 (2013).

tion cards[8] receive immunity from criminal prosecution. MCL 333.26424(a); *Kolanek*, 491 Mich at 394-395. To be entitled to immunity, a qualifying patient cannot possess more than 2.5 ounces of usable marijuana and 12 marijuana plants. MCL 333.26424(a). Section 4(b) contains a parallel immunity provision that applies to registered primary caregivers. *Bylsma*, 493 Mich at 28. Our Supreme Court recently clarified that the immunity provisions in § 4 do not extend to

> a registered qualifying patient who transfers marijuana to another registered qualifying patient for the transferee's use because the transferor is not engaging in conduct related to marijuana for the purpose of relieving *the transferor's own* condition or symptoms. Similarly, § 4 immunity does not extend to a registered primary caregiver who transfers marijuana for any purpose other than to alleviate the condition or symptoms of a specific patient *with whom the caregiver is connected through the [Michigan Department of Community Health's] registration process.* [*McQueen*, 493 Mich at 156.]

Under § 4(d), qualifying patients and primary caregivers are presumed to be "engaged in the medical use of marihuana in accordance with [the MMMA]" if they are in possession of (1) "a registry identification card" and (2) "an amount of marihuana that does not exceed the amount allowed under this act." MCL 333.26424(d). This presumption is rebuttable—if the prosecution provides "evidence that conduct related to marihuana was not for the purpose of alleviating the qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition, in accordance with this act" it will not apply. MCL 333.26424(d)(2).

---

[8] MCL 333.26423(j) defines "registry identification card" as "a document issued by the department that identifies a person as a registered qualifying patient or registered primary caregiver."

Here, defendant's transfer of marijuana to the confidential informant is clearly not protected under § 4. See *McQueen*, 493 Mich at 156. He transferred marijuana to the confidential informant, who, though a registered qualifying patient, was not connected to defendant through the state's registration process.

Defendant concedes that he is not entitled to § 4 immunity for the sales of marijuana to the confidential informant. Yet he asserts that the other charges—namely, the ones related to marijuana possession and the accompanying felony-firearm counts—should be dismissed under § 4. He bases this claim on the following evidence: (1) his and his patients' possession of valid registry identification cards, and (2) his possession of 33 marijuana plants and 1.34 ounces of dried marijuana—an amount less than permitted to him under § 4(b).[9] As such, defendant claims he is entitled to the presumption under § 4(d) that he is "engaged in the medical use of marihuana in accordance with" the MMMA. MCL 333.26424(d).

Defendant is correct that he is entitled to the presumption in § 4(d): he was in possession of the requisite identification cards and possessed an "amount of marihuana that [did] not exceed the amount allowed under [the MMMA]." MCL 333.26424(d)(2). But what § 4(d) gives may also be lost under § 4(d)(2), because the prosecution may rebut the presumption. It has done so here. Defendant has engaged in "conduct related to marihuana [that] was not for the purpose of alleviating the qualifying patient's debilitating medical condition

---

[9] Under § 4(b)(2), defendant could possess up to 36 plants and, subject to certain volume limitations, remain in compliance with the MMMA. The statute allows him to possess 12 plants for himself, plus 12 plants for each patient for whom he is a caregiver (3 x 12 = 36). In addition, § 4(b)(1) allows defendant to possess up to 7.5 ounces of usable marijuana: 2.5 ounces for himself, and 5 ounces combined for his two patients.

or symptoms associated with the debilitating medical condition, *in accordance with this act.*" MCL 333.26424(d)(2) (emphasis added). By his own admission, defendant sold marijuana to an individual outside the parameters of the MMMA. And as a consequence, he does not have the privilege to claim immunity under § 4. This action rebuts the presumption with regard to *all* his conduct involving marijuana—even conduct involving his two other qualifying patients.

Defendant attempts to obscure this clear statutory outcome by asserting that there is no evidence that the specific marijuana found by the police in his home—i.e., the 33 plants and 1.34 ounces of useable marijuana— was used for the illegal sale to the confidential informant. He also suggests that one illicit marijuana sale shouldn't "taint" the ostensibly "clean" marijuana used to supply his legitimate, MMMA-compliant patients.

This argument lacks any grounding in the statute itself. Defendant ignores that it is his *conduct* that is at issue— conduct that is tainted by his violation of the MMMA. Defendant's reasoning also contravenes the MMMA's stated aims: to provide a particular exception to the general illegality of marijuana use,[10] so that the drug can be used by "individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use 'is carried out in accordance with the provisions of [the MMMA].' " *Kolanek*, 491 Mich at 394 (alteration in original), quoting MCL 333.26427(a). And, as noted, defendant's claim ignores common sense. The fact that he sold marijuana to the confidential informant is obvious evidence that defendant did not conduct his marijuana-related activities in compli-

---

[10] See *Bylsma*, 493 Mich at 27 (which held that the MMMA provides an "exception to the Public Health Code's prohibition on the use of controlled substances").

ance with the MMMA. The plain meaning of § 4 does not allow defendant to decouple his illicit actions involving marijuana from his other marijuana-related activities—even if those other activities are within the parameters of the statute. The evidence of defendant's illicit actions rebuts the presumption of MMMA-compliant conduct.

Accordingly, defendant is not entitled to the immunity provisions of § 4. The trial court was correct to so hold, and we affirm.

### B. SECTION 8(A) DEFENSE

Under § 8(a) of the MMMA, a defendant may assert the medical purpose for using marijuana as a defense in any prosecution involving marijuana.[11] The defense has three elements, all of which must be satisfied for the defense to be successful. MCL 333.26428(a).[12] This burden originates in the medical reasons that inform the statute.

---

[11] Defendant's claims regarding § 8 of the MMMA are almost identical to the claims of the defendant in *People v Hartwick*, 303 Mich App 247; 842 NW2d 545 (2013), which was submitted to this same panel on the same date as this case. Accordingly, our analysis of § 8 in the two cases is largely the same.

[12] The Michigan Supreme Court recently outlined very specific steps and procedural outcomes for defendants who assert the § 8(a) affirmative defense. If the defendant establishes the three § 8(a) elements during a pretrial evidentiary hearing, and there are no material questions of fact, the defendant is entitled to dismissal of the charges. *Kolanek*, 491 Mich at 412. If the defendant establishes evidence of each element, but there are still material questions of fact, then the § 8(a) affirmative defense must be submitted to a jury. *Id.* Finally, if no reasonable juror could conclude that the defendant has satisfied the elements of the § 8(a) affirmative defense, then the defense fails as a matter of law and the defendant is precluded from asserting it at trial. *Id.* at 412.

In this case, the trial court held that no reasonable juror could conclude that defendant had satisfied all the elements of the § 8(a) affirmative defense. Accordingly, it ruled that the defense failed as a matter of law and that defendant was precluded from asserting it at trial.

Before we address each subsection of § 8, it is important to consider the mandate of the section as a whole. Because the MMMA is a limited statutory exception to the general state prohibition of marijuana, the MMMA promulgates a comprehensive statutory scheme that must be followed if caregivers and patients wish to comply with the law. Section 8 outlines a possible defense that a defendant can raise when charged with any state crime involving marijuana. In so doing, the section weaves together the obligations of each individual involved in the prescription, use, and production of marijuana for medical purposes. Under the act, doctors must have an ongoing relationship with their patients, in which the doctor regularly reviews the patient's condition and revises any marijuana prescription accordingly.[13] Further, patients must provide certain basic information regarding their marijuana use to their caregivers. And caregivers, to be protected under the MMMA, must ask for this basic information—specifically, information that details, as any pharmaceutical prescription would, how much marijuana the patient is supposed to use, and how long that use is

---

[13] The importance of a legitimate, ongoing relationship between the marijuana-prescribing doctor and the marijuana-using patient is stressed throughout the MMMA. Section 4(f), which provides a qualified immunity for physicians, mandates that the immunity only applies to physicians that prescribe marijuana "in the course of a bona fide physician-patient relationship . . . ." MCL 333.26424(f). Section 4(f) further implies that this relationship must be ongoing by stressing that "nothing shall prevent a professional licensing board from sanctioning a physician for . . . otherwise violating the standard of care for evaluating medical conditions." This standard of care presumably includes follow-up visits with the patient. And § 6—as noted, the section that governs the issuance of registry cards—also implies the expectation of an ongoing physician-patient relationship. It states that if a "patient's certifying physician notifies the department in writing that the patient has ceased to suffer from a debilitating medical condition, the card shall become null and void upon notification by the department to the patient." MCL 333.26426(f).

supposed to continue. Though patients and caregivers are ordinary citizens, not trained medical professionals, the MMMA's essential mandate is that marijuana be used for medical purposes. Accordingly, for their own protection from criminal prosecution, patients and caregivers must comply with this medical purpose— patients by supplying the necessary documentation to their caregivers, and caregivers by only supplying patients who provide the statutorily mandated information.

Possession of a registry card, without more, does nothing to address these § 8 medical requirements. It offers no proof of the existence of an ongoing relationship between patient and physician, as mandated by § 8(a)(1). Nor does it prove the caregiver is aware of how much marijuana the patient is prescribed or for how long the patient is supposed to use the drug, as mandated by § 8(a)(2). And it does not ensure the marijuana sold by the caregiver is actually being used by the patient for medical reasons, as mandated by § 8(a)(3).

In sum, possession of a registry card is not sufficient to demonstrate compliance with the MMMA, and clearly does not satisfy the requirements for asserting the § 8 defense in a prosecution for a crime involving marijuana.

### 1. SECTION 8(a)(1): THE BONA FIDE PHYSICIAN-PATIENT RELATIONSHIP

To satisfy § 8(a)(1), a defendant must present evidence that

[a] physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient rela-

tionship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition[.] [MCL 333.26428(a)(1).]

Defendant claims that the documents he presented at the evidentiary hearing—his medical marijuana patient and caregiver cards, his patients' registry identifications, and the various documentation supporting both—are sufficient evidence to satisfy the requirement of a physician statement and a bona fide physician-patient relationship. In addition, defendant asserts that the testimony of his two patients is further evidence of the existence of the bona fide physician-patient relationship required by the statute. We address each claim in turn.

### a. REGISTRY IDENTIFICATION CARDS

Defendant's argument regarding the registry identification cards has some basis in § 6 of the MMMA. Section 6 governs the procedures patients and the Department of Licensing and Regulatory Affairs (the department) must follow for the department to issue patient and caregiver cards. Specifically, § 6(a) mandates that the department

shall issue registry identification cards to qualifying patients who submit the following, in accordance with the department's rules:

(1) A written certification;

(2) Application or renewal fee;

(3) Name, address, and date of birth of the qualifying patient, except that if the applicant is homeless, no address is required;

(4) Name, address, and telephone number of the qualifying patient's physician;

(5) Name, address, and date of birth of the qualifying patient's primary caregiver, if any;

(6) Proof of Michigan residency. [MCL 333.26426(a).[14]]

In its definitional section, the MMMA defines a "written certification" as a document signed by a physician that states the following:

(1) The patient's debilitating medical condition.

(2) The physician has completed a full assessment of the patient's medical history and current medical condition, including a relevant, in-person, medical evaluation.

(3) In the physician's professional opinion, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's debilitating medical condition or symptoms associated with the debilitating medical condition. [MCL 333.26423(m).]

The MMMA mandates that the department cannot issue a registry identification card to a patient or caregiver applicant unless it verifies the information submitted in the patient or caregiver's written certification. As such, possession of a registry identification card, if valid, satisfies some of the requirements of § 8(a)(1). Further, if the department actually followed its statutory obligations and conducted an investigation, the card would serve as evidence that a physician did the following: (1) completed a full assessment of the patient's medical history, (2) conducted an in-person medical evaluation, (3) observed a debilitating medical condition, and (4) concluded that the patient is likely to

_____

[14] Under the earlier version of the MMMA that applies to this case, the final element, MCL 333.26426(a)(6), read as follows: "If the qualifying patient designates a primary caregiver, as designation as to whether the qualifying patient or primary caregiver will be allowed under state law to possess marihuana plants for the qualifying patient's medical use." 2008 IL 1. Neither this earlier language nor the amended language concerning residency bears on the outcome of this case.

benefit from the medical use of marijuana. However, the physician's written certification is not evidence of the existence of the bona fide physician-patient relationship, which is required for the § 8(a) affirmative defense.

The initial, voter-initiative version of the MMMA did not define "bona fide physician-patient relationship." See *People v Redden*, 290 Mich App 65, 86; 799 NW2d 184 (2010). The Legislature has since amended the MMMA to define that phrase. See 2012 PA 512. But this amendment took effect April 1, 2013. The new definition is therefore not applicable to cases, like this one, that arose before that date. See *People v Russo*, 439 Mich 584, 594; 487 NW2d 698 (1992) ("The general rule of statutory construction in Michigan is that a new or amended statute applies prospectively unless the Legislature has expressly or impliedly indicated its intention to give it retrospective effect. This rule applies equally to criminal statutes.") (citation omitted). If the MMMA had originated in the Legislature, the amendment could be considered evidence of what the Legislature intended "bona fide physician-patient relationship" to mean at the date of the MMMA's enactment.[15] But the MMMA is the result of a voter initiative, passed by the people of Michigan. As such, we must "ascertain and give effect to the intent of the electorate, rather than the Legislature, as reflected in the language of the law itself." *Kolanek*, 491 Mich at 397. The Court is thus

---

[15] The Legislature clearly has the power to subsequently amend statutes that enact voter initiatives. Const 1963, art 2, § 9; *Advisory Opinion on Constitutionality of 1982 PA 47*, 418 Mich 49, 64; 340 NW2d 817 (1983). It is unclear, however, if such a subsequent legislative amendment can serve as evidence of the peoples' intent at the time they passed the initiative. In this case, we follow the preamendment holdings of our Supreme Court, which instruct us to look to the plain meaning of the MMMA's terms to discern the peoples' intent.

required to construe the MMMA's language with the words' "ordinary and plain meaning as would have been understood by the electorate." *Id.*

Earlier cases have defined "bona fide" in the pre-amendment context. This Court used a dictionary to discern the plain-meaning definition of the term in *Redden*. *Redden* stated that *"Random House Webster's College Dictionary* (1997) defines 'bona fide' as '1. made, done, etc., in good faith; without deception or fraud. 2. authentic; genuine; real.' " *Redden*, 290 Mich App at 86. Our Supreme Court also quoted with approval a joint statement issued by the Michigan Board of Medicine and the Michigan Board of Osteopathic Medicine and Surgery, which advised that the phrase "bona fide physician-patient relationship" envisioned " 'a pre-existing and ongoing relationship with the patient as a treating physician.' " *Kolanek*, 491 Mich at 396 n 30 (citation omitted).

These definitions do not support defendant's effort to substitute the procedural requirements in § 6 for the legal requirements in § 8. The steps outlined in § 6 for obtaining a patient or caregiver's card cannot demonstrate the existence of a physician-patient relationship that is "pre-existing" and involves "ongoing" contact. Accordingly, mere possession of a patient identification card, a caregiver's card, or both does not satisfy the requirements of § 8(a)(1). That the statute requires this outcome is in keeping with its medical purpose and protects the patients it is designed to serve. By requiring a bona fide physician-patient relationship in order to establish the affirmative defense under § 8, the MMMA prevents doctors who merely write prescriptions—such as the one featured in *Redden*[16]—

---

[16] The *Redden* physician practiced medicine in six states, spent 30 minutes with each of the *Redden* defendants, and seemingly examined

from seeing a patient once, issuing a medical marijuana prescription, and never checking on whether that prescription actually treated the patient or served a palliative purpose.

### b. THE PATIENT TESTIMONY

Our analysis of the phrase "bona fide physician-patient relationship" cannot end here, as defendant also asserts that the testimony of his two patients satisfies this requirement of § 8(a)(1). This assertion is incorrect. Again, defendant attempts to elide the fact that he illegally sold marijuana to the confidential informant. He does so by pointing to his supposedly legal activities involving marijuana with his two qualifying patients. Defendant did not provide evidence of the confidential informant's bona fide patient-physician relationship with his physician.[17] Nor did defendant provide evidence of a bona fide relationship between defendant and his own physician. Defendant did present a number of documents at the evidentiary hearing, which primarily related to the defendant's caregiver status for his two patients. He also presented a physician's certifica-

the patients with the express purpose of helping them qualify to receive marijuana for medical purposes. See *Redden*, 290 Mich App at 70-71.

[17] In fact, the confidential informant testified at the evidentiary hearing that he received the certification for his registry identification card by speaking with a doctor—or someone who claimed to be a doctor—over the phone. He spoke with the individual for less than 10 minutes. The confidential informant could not remember the name of the certifying doctor, and testified that he had never seen the doctor before, nor had he seen the doctor since. Whatever sort of relationship existed between the confidential informant and the certifying physician, it was certainly not a bona fide physician-patient relationship as required by the MMMA. In short, the confidential informant possessed a state-issued registry identification card—and yet did not have the bona fide relationship with his physician required for the § 8 affirmative defense. There is no plainer illustration of why mere possession of a registry identification card does not satisfy defendant's evidentiary burden under § 8(a)(1).

tion for his own use of marijuana for medical purposes. Neither that certification, nor any other evidence submitted by defendant, indicates (1) how often defendant saw his doctor, (2) what kinds of evaluations the doctor performed, or (3) when he began seeing his doctor.

In addition, the testimony of his two qualifying patients does not demonstrate the existence of a bona fide relationship between the patients and their physicians. One of the patients testified that he saw his certifying physician one time, for an hour. The other saw his certifying physician twice. This evidence does not demonstrate a " 'pre-existing and ongoing relationship' " between patient and physician. See *Kolanek*, 491 Mich at 396 n 30 (citation omitted).

Accordingly, we hold that mere possession of a patient identification card, a caregiver's card, or both does not satisfy § 8(a)(1). Further, we hold that the testimony of defendant's patients did not demonstrate a bona fide physician-patient relationship. Therefore, the trial court was correct to rule that defendant did not present valid evidence with respect to the first element of the § 8 affirmative defense.

### 2. SECTION 8(a)(2): NO MORE MARIJUANA THAN "REASONABLY NECESSARY"

To satisfy § 8(a)(2), a defendant must present evidence that

[t]he patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428(a)(2).]

Accordingly, this element contains two components: (1) possession and (2) knowledge of what amount of marijuana is "reasonably necessary" for the patient's treatment.

Defendant notes that the amount of marijuana seized from his home is less than that permitted to him by § 4(b). Though he admits that this fact alone is not enough to satisfy the "reasonably necessary" standard of § 8(a)(2), he suggests that it be given "substantial weight" in our determination.

Defendant's approach misconstrues the law and ignores common sense. Our Supreme Court has strongly suggested that §§ 4 and 8, and the mandates found in each, are to be kept separate. See *Kolanek*, 491 Mich at 397-399. They are different sections and address different standards.[18] *Id.* This Court has also noted that mixing of the standards set forth in §§ 4 and 8 does violence to rules of statutory interpretation: "Indeed, if the intent of the statute were to have the amount in § 4 apply to § 8, the § 4 amount would have been reinserted into § 8(a)(2), instead of the language concerning an amount 'reasonably necessary to ensure . . . uninterrupted availability . . . .' " *Redden*, 290 Mich App at 87, quoting MCL 333.26428(a)(2). Further, importing the quantity limitations from § 4(b) into § 8(a)(2) ignores the treatment-oriented nature of the MMMA and the specific medical requirements of § 8(a). Those requirements are intended for a patient or caregiver who is intimately aware of how much marijuana is required to treat his or her condition, which he or she learns from a doctor with whom the patient or caregiver has an ongoing relationship.

At the evidentiary hearing, defendant's patients testified regarding the amount of marijuana defendant

[18] See also *Bylsma*, 493 Mich at 28.

provided. However, they did not give testimony that defendant knew how much marijuana was necessary to treat their debilitating medical conditions. Defendant himself also failed to provide any evidence of how much marijuana he used, or how often he used it to treat his severe or debilitating medical condition. Finally, defendant obviously had more marijuana than reasonably necessary to treat him and his patients. He possessed enough to sell to the confidential informant—on three different occasions.

Defendant thus failed to satisfy the second element of the § 8 affirmative defense. Accordingly, the trial court properly held that there was no question of fact with regard to this issue.

### 3. SECTION 8(a)(3): ACTUAL MEDICAL USE OF MARIJUANA

To satisfy § 8(a)(3), a defendant must present evidence that

[t]he patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428(a)(3).]

The trial court held that defendant established this element, and pointed to the testimony of defendant's patients as its reason for so holding. The two patients testified that they suffer from chronic pain, which is alleviated through the medical use of marijuana. The trial court found this testimony demonstrated that the marijuana at issue in the case was actually used to alleviate "the [patients'] serious or debilitating medical condition" as required by § 8(a)(3).

The trial court's holding with respect to this element is flawed. Any analysis of § 8(a)(3) needs to incorporate every patient possibly using the marijuana at issue. Here, that group includes four individuals: defendant, his two patients, and the confidential informant. The trial court received testimony on this matter—testimony that it found convincing—from two of these individuals. It also heard from the confidential witness, who stated that he suffered from chronic pain, which he used marijuana to treat. But the trial court did not cite his testimony as a factor in its § 8(a)(3) determination.

In addition, the trial court received no testimony from defendant himself, who is a qualifying patient and caregiver. Defendant did not provide evidence that he personally used the marijuana found in his home to alleviate a "serious or debilitating medical condition," as required by § 8(a)(3). We again note that mere possession of a registry card is insufficient evidence for the purposes of § 8(a)(3). Possession of a registry card indicates that the holder has gone through the required steps set forth in § 6 to obtain a registry card. It does not indicate that any marijuana possessed or manufactured by an individual is *actually* being used to treat or alleviate a debilitating medical condition or its symptoms. In other words, prior state issuance of a registry card does not guarantee that the holder's subsequent behavior will comply with the MMMA. We reverse the trial court's ruling that defendant satisfied the elements of § 8(a)(3).

### V. CONCLUSION

Because the prosecution presented evidence to rebut the medical-use presumption under § 4(d), defendant is not entitled to immunity under § 4. Further, because defendant did not present evidence satisfying all three

elements of the § 8 affirmative defense, he is not entitled to have the case dismissed under that section, nor is he permitted to assert that defense at trial. In so holding, we note that the trial court improperly held that defendant satisfied one element of the affirmative defense, § 8(a)(3). Nonetheless, the trial court properly rejected defendant's § 4 and § 8 claims.[19] We therefore reverse the trial court's ruling as to § 8(a)(3), but affirm its order denying defendant's motion to dismiss the case and precluding defendant from asserting a § 8 defense at trial.

SAWYER, J., concurred with SAAD, P.J.

JANSEN, J. (*concurring in the result*). I concur in the result only.

---

[19] "A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).