# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

BRIAN PHILLIP SOMMER,

Defendant-Appellee.

UNPUBLISHED
September 22, 2015

No. 319184
Oakland Circuit Court
LC No. 2012-242481-FH

Before: SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion to assert the statutory defense under MCL 333.26428 (section 8 defense) of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, and its consequent dismissal of a charge of manufacturing marijuana, MCL 333.7401(2)(d)(*iii*) against defendant. For the reasons set forth in this opinion, we reverse and remand.

## I. FACTS AND PROCEDURAL HISTORY

On June 22, 2012, two police officers were in pursuit of two home invasion suspects when they observed persons meeting the description of the suspects enter a condominium. When one of the officers knocked on the door of that apartment, defendant opened it. At least one of the suspects was found inside. While in defendant's home, the officers found a mason jar filled with marihuana, ten marijuana roaches, a box of baggies, a scale, and cash sitting on a coffee table. Behind a "floor-to-ceiling sheet of plastic" the officers found 17 marihuana plants, two mounted sun lights, two ballasts, two timers, fertilizers and grow agents, and an exhaust system. Defendant was charged with manufacturing marijuana.

Defendant thereafter filed a motion to assert a section 8 defense. He asserted that he had a valid physician certification indicating that he would benefit from using marihuana, that the amount of marihuana he had was reasonably necessary to treat his condition, and that he had the marihuana exclusively for his own use. An evidentiary hearing was held over several days, during which the trial court heard from defendant and the prescribing physician. Defendant's doctor asserted his Fifth Amendment right against self-incrimination during his testimony and was not qualified as an expert in any field.

After hearing this testimony, the trial court found "that the defendant has met his burden of proof pursuant to Section 8 of the act; and that no question of fact exists as to each of the elements of the affirmative defense." Accordingly, the trial court dismissed the charge against defendant. Plaintiff now challenges this ruling.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion to dismiss for an abuse of discretion. *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). "A trial court's findings of fact may not be set aside unless they are clearly erroneous. A ruling is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012) (citation and internal quotation marks omitted). Questions of statutory interpretation, including interpretation of the MMMA, are reviewed de novo. *People v Redden*, 290 Mich App 65, 76; 799 NW2d 184 (2010).

## III. ANALYSIS

The MMMA was approved by the electorate and became effective on December 4, 2008. *People v Kolanek*, 491 Mich 382, 393; 817 NW2d 528 (2012). Its purpose "is to allow a limited class of individuals the medical use of marijuana" " 'for the health and welfare of [Michigan] citizens.' " *Id*. at 393-394, quoting MCL 333.26422(c). "[T]he MMMA defines the parameters of legal medical-marijuana use, promulgates a scheme for regulating registered patient use and administering the act, and provides for an affirmative defense, as well as penalties for violating the MMMA." *Id*. at 394. When interpreting the MMMA, this Court must ascertain and give effect to the intent of the voters, rather than the Legislature, as reflected in the language of the law itself. *Redden*, 290 Mich App at 76. Therefore, this Court must give the MMMA's language its "ordinary and plain meaning as would have been understood by the electorate." *Kolanek*, 491 Mich at 397.

"[T]he MMMA's protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use 'is carried out in accordance with the provisions of' " the MMMA. *Kolanek*, 491 Mich at 394, quoting MCL 333.26427(a). "Because the MMMA creates a limited statutory exception to the general federal and state prohibition of marijuana, the MMMA provides a comprehensive statutory scheme that must be followed if caregivers and patients wish to comply with the law." *Hartwick*, 303 Mich App at 257, reversed on other grounds, 498 Mich 192 (2015). "This scheme makes clear that the burden of proof rests with the defendant[.]" *Kolanek*, 491 Mich at 410.

Section 8, MCL 333.26428, provides medical marijuana patients an affirmative defense to charges involving marijuana for its medical use. *Kolanek*, 491 Mich at 396.

Under § 8, a patient in any criminal prosecution involving marijuana may establish an affirmative defense requiring dismissal of the charges if the patient can establish that (1) "[a] physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medicinal use of marihuana," (2) the patient did not possess an amount of marijuana that was more than "reasonably necessary" for this purpose, and (3) the patient's use was "to treat or alleviate the patient's serious or debilitating medical condition or symptoms . . . ." [*Id.* at 398-399, quoting MCL 333.26428(a) (citation omitted).]

A registry identification card is not sufficient to satisfy the § 8 requirements for a total defense to a charge of violation of this act. *People v Hartwick*, __ Mich __, slip op at 10; __ NW2d __ (2015).

"[I]f a defendant raises a § 8 defense, there are no material questions of fact, and the defendant 'shows the elements listed in subsection (a),' then the defendant is entitled to dismissal of the charges following the evidentiary hearing." *Kolanek*, 491 Mich at 412. "[I]f a defendant establishes a prima facie case for this affirmative defense by presenting evidence on all the elements listed in subsection (a) but material questions of fact exist, then dismissal of the charges is not appropriate and the defense must be submitted to the jury." *Id*. "[I]f there are no material questions of fact and the defendant has not shown the elements listed in subsection (a), the defendant is not entitled to dismissal of the charges and the defendant cannot assert § 8(a) as a defense at trial." *Id*. Conflicting evidence regarding whether a bona fide physician-patient privilege exists, whether the amount of marijuana possessed was reasonable, and whether a defendant's condition is serious or debilitating may present a material question of fact. *Id*.

## A. SECTION 8(A)(1): THE BONA FIDE PHYSICIAN-PATIENT RELATIONSHIP

To satisfy § 8(a)(1), a defendant must present evidence to establish the following:

A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition[.]

Although the MMMA originally did not provide a definition of a "bona fide physician-patient relationship,"[1] it did recognize "a joint statement by the Michigan Board of Medicine and

_____

[1] MCL 333.26423(a), which was enacted on April 1, 2013, now provides a definition for a "bona fide physician-patient relationship." However, this definition does not apply to cases that arose

the Michigan Board of Osteopathic Medicine and Surgery [that] advises that this term envisions 'a pre-existing and ongoing relationship with the patient as a treating physician.' " *Kolanek*, 491 Mich at 396 n 30.[2]

We conclude that the trial court erred in dismissing the charge against defendant because a material question of fact existed as to whether defendant and defendant's doctor had a bona fide physician-patient relationship. Defendant's doctor testified that although he did not recognize defendant, his signature was on defendant's "physician's summary" and that he "obviously" met with defendant. The doctor stated that he "evidently reviewed the history" when asked if he reviewed defendant's medical file. Defendant testified that he made an appointment, showed "them the medical records," talked with a nurse, talked with "the doctor," "[a]nd that was pretty much most of it." He described his entire meeting with "the doctor" as 15 or 20 minutes.

Defendant did present evidence to support his contention that he had a bona fide physician-patient relationship with the doctor, but looking at the evidence as a whole, questions of material fact exist. Defendant and the doctor were unable to provide any medical records regarding defendant's condition other than the "physician's summary" and a document explaining that defendant and the doctor agreed on treating defendant's condition with marijuana. In fact, the doctor was unable to provide any medical records upon which he relied and admitted that his clinic needed to improve in its document retention. Considering the lack of medical records and the nature of defendant and the doctor's interaction (for example, its brevity), a reasonable jury could conclude that "a pre-existing and ongoing relationship with the patient as a treating physician" did not exist. *Kolanek*, 491 Mich at 396 n 30.[3] Therefore, because the trial court erred in concluding that no material questions of fact existed as to whether defendant and the doctor had a bona fide physician-patient relationship, the trial court erred in dismissing the charge against defendant. *Id.* at 411 ("Questions of fact are the province of the jury, while questions of law are reserved to the courts.").

B. SECTION 8(A)(2): NO MORE MARIJUANA THAN "REASONABLY NECESSARY"

---

before its enactment. See *People v Tuttle*, 304 Mich App 72, 89; 850 NW2d 484 (2014), reversed on other grounds, *People v Hartwick*, __ Mich __; __ NW2d __ (2015). ("The new definition is therefore not applicable to cases, like this one, that arose before [April 1, 2013].").

[2] Quoting *Statement of the Board of Medicine and Board of Osteopathic Medicine and Surgery Regarding Certification for Medical Use of Marihuana by Michigan Physicians* <https://www.michigan.gov/documents/lara/lara_Medical_Marihuana_Final_Written_Certification_Statement_8-15-11_376283_7.pdf> (accessed May 25, 2012).

[3] Indeed, this Court has held that simply seeing a patient once, issuing a medical marijuana prescription, and never checking on whether that prescription actually treated the patient or served as a palliative was insufficient to establish a pre-existing and ongoing relationship with a physician as a matter of fact. *Redden*, 290 Mich App at 85-86.

To satisfy § 8(a)(2), a defendant must present evidence to establish the following:

> The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition[.]

After considering the record, we conclude that a material question of fact existed as to whether the amount of marijuana that defendant had in his home was no more than reasonably necessary to treat his condition. Defendant contends "that the most qualified person to determine the amount of marijuana necessary to relieve the stress and pain of medical maladies is in fact the patient who suffers from them." There is some merit to this position. As indicated in *Hartwick*, "[a] patient seeking to assert a § 8 affirmative defense may have to testify about whether a specific amount of marijuana alleviated the debilitating medical condition and if not, what adjustments were made to the consumption rate and the amount of marijuana consumed to determine an appropriate quantity." slip op, at 11. However, the *Hartwick* court also stated that once the defendant establishes the amount of usable marijuana needed to treat the debilitating medical condition, "determining whether the patient possessed 'a quantity of marihuana that was not more than was reasonably necessary to ensure [its] uninterrupted availability' also depends on how the patient obtains marijuana and the reliability of this source." *Id*.

Defendant testified that he used approximately an ounce of marihuana per week and that he had 17 plants growing in his home, which he planned on harvesting. He testified that he had never grown marihuana before, that no one had really told him how to grow the plants, he had not used any of the plants that were in his home yet, and he had no idea of what the potential output or yield from a marihuana plant may be. Defendant thought, however, that he had enough marihuana growing to hopefully treat his condition for a year.

Clearly, defendant had no idea whether the amount of marijuana in his possession was "of a quantity of marihuana [that] was not more than was reasonably necessary" as that set forth in § 8(a)(2). While he testified that he smoked about an ounce per week, he did not testify that this amount was reasonably necessary to treat his condition. The identification of a proper treating medication and dosage is a matter that would benefit from the testimony of medical personnel. Moreover, assuming that this amount was the proper amount to alleviate defendant's symptoms, defendant could not testify as to the amount of usable product that the 17 plants he had in his possession would yield. Accordingly, at a minimum, questions of fact existed as to whether defendant was in possession of a quantity of marihuana that was not more that was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the symptoms of his condition.

## C. SECTION 8(A)(3): ACTUAL MEDICAL USE OF MARIJUANA

To satisfy § 8(a)(3), a defendant must present evidence to establish the following:

> The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or

transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

While a registry card qualifies a patient for the medical use of marihuana, "[i]t does not establish that at the time of the charged offense, the defendant was actually engaged in the protected use of marijuana." *Hartwick*, slip op at 12. A defendant must present evidence that he uses the marihuana for a medical purpose regardless of whether he possesses a registry card. *Id*.

A material question of fact existed as to whether the marihuana found in defendant's home was for the purpose of treating or alleviating his serious or debilitating medical condition or symptoms of that condition. During the evidentiary hearing, defendant testified that he began experiencing pain from TMJ "a couple years ago." He stated that he first tried over-the-counter medicine like aspirin and ibuprofin, and that when that did not help, he got his medical marihuana card but never tried any other form of treatment. As plaintiff points out, however, defendant testified that he was able to overcome his condition and not use marihuana when his daughter was present or during work hours.

The only other testimony regarding defendant's condition was that of defendant's doctor, who testified that defendant was diagnosed with TMJ and that medical marihuana was likely to treat defendant's condition. The doctor was not qualified as an expert in any area, including that of TMJ or medical marihuana. In fact, the doctor admitted that he had no formal training with medical marihuana and knew of no studies that supported its use, "but . . . would very much like to find out." With regard to TMJ, the doctor was unable to articulate if he had ever treated any patients with TMJ; he had merely watched other doctors do so when he was an extern. A reasonable jury could conclude that without any medical documentation of such a condition, the marihuana that defendant possessed was not being used to treat his condition.

Defendant also attempted to admit a letter purportedly written by one of his doctors; however, the trial court found that such a letter was inadmissible hearsay. Defendant argued that the trial court should accept this letter because "we did what we possibly could," "we're trying to do everything we can," and that it would be too expensive to bring in the doctor who wrote the letter. These arguments simply do not address whether the letter is inadmissible hearsay. As such, the trial court properly excluded this evidence.

IV. CONCLUSION

Because material questions of fact existed as to whether a bona fide physician-patient relationship existed between defendant and his doctor, as to whether the amount of marihuana that defendant possessed was no more than the amount reasonably necessary to treat his condition, and as to whether the marihuana that defendant possessed was actually used to treat his serious or debilitating medical condition, we conclude that the trial court erred in dismissing the charge against defendant. We therefore reverse the trial court's order dismissing this matter.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Michael J. Kelly