# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JUSTIN CHRISTOPHER FARRSIAR,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2015

No. 320376
Gogebic Circuit Court
LC No. 2013-000070-FH

Before: BOONSTRA, P.J., and SAAD and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right from his conviction on three counts (counts 3, 4, & 5 in the information) related to manufacturing methamphetamines (meth).[1]  See MCL 333.7401c(1)(a), (2)(d) and (2)(f).  He was sentenced as a habitual offender, second offense, MCL 769.10, to serve 96 months to 30 years in prison.  We affirm.

## I.  FACTS

On January 2, 2013, members of the Upper Peninsula Substance Enforcement Team (UPSET) responded to a suspected meth lab located in a house in the city of Ironwood.  By the time they arrived a fire had damaged several parts of the house, including the floor.  In an apartment inside the house the team found chemicals and equipment used to make "one-pot" meth.  Tammy Korpela rented the apartment and was dating and had a son with defendant.  According to Korpela, she and defendant were both meth users and used meth together during their relationship.  At the time of defendant's trial, Korpela had pleaded guilty to several felony counts related to manufacturing meth, and was in jail awaiting sentencing.  Korpela agreed to testify truthfully at defendant's trial and was given the opportunity to plead guilty to a lesser charge.

---

[1] Counts 1 and 2 were based on manufacturing a controlled substance in the presence of a minor. Because the evidence adduced at trial was that there were no children present at the time the offense occurred, the trial court granted defendant's motion for a directed verdict on these counts.

-1-

According to Korpela, she and defendant made meth together on December 31, 2012, at her apartment. They had purchased boxes of pseudoephedrine, an ingredient used to make meth, over the previous months and purchased the other necessary household ingredients earlier that day. After making the meth they left the apartment and drove to Korpela's friend's house. When they returned an hour later, they saw fire trucks and knew that there had been a fire. According to Korpela, defendant took Korpela back to her friend's house and then went to his motel room to destroy evidence. Defendant returned a short time later with their son, and they fled to Duluth, Minnesota. They returned to Ironwood the next day, planning to leave again, but Korpela decided she did not want to run. Both were subsequently arrested. Korpela initially told the police that she had made the meth by herself, but she later accepted a plea agreement and changed her story, implicating defendant.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to convict him. While this Court reviews challenges to the sufficiency of the evidence de novo, see *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014), "[t]he test for determining the sufficiency of evidence in a criminal case is whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt," *People v Gonzalez*, 468 Mich 636, 640; 664 NW2d 159 (2003). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* at 640-641 (citation omitted).

Defendant's primary argument is that the evidence was insufficient because Tammy Korpela was not a credible witness. "[A]bsent exceptional circumstances, issues of witness credibility are for the jury . . . ." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). See also *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999) ("Questions of credibility are left to the trier of fact and will not be resolved anew by this Court."). On cross-examination, Korpela conceded that she changed her story and implicated defendant immediately after pleading guilty pursuant to a plea bargain from the prosecutor's office. The jury also heard Korpela testify that she suffers from and is medicated for mental illness that affects her thought process. On the other hand, Korpela's story is at least partially supported by (1) video surveillance images that show her and defendant purchasing the household ingredients used to make meth, (2) pharmacy record logs indicating that defendant bought pseudoephedrine, and (3) instructions for making meth found on defendant's phone. Presumably, the jury found Korpela to be a credible witness and believed that she was telling the truth at trial.

Accordingly, there was both direct and circumstantial evidence that supported the verdict. "Circumstantial evidence and reasonable inferences arising from that evidence may constitute sufficient evidence to find all the elements of an offense." *People v Meshell*, 265 Mich App 616, 621; 696 NW2d 754 (2005) (citation omitted). Because a rational trier of fact could have found defendant guilty beyond a reasonable doubt, the evidence was sufficient to convict defendant.

## III. DOUBLE JEOPARDY

Defendant argues that his conviction on count 5 (a violation of MCL 333.7401(2)(f)) violates double jeopardy because it imposes a second punishment for the same offense as underlies his convictions in counts 3 and 4 (violations of MCL 333.7401(2)(d)).

Defendant did not raise this issue below. A double-jeopardy challenge raised

for the first time on appeal, [is] not preserved for appellate review. However, a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court. We review an unpreserved claim that a defendant's double jeopardy rights have been violated for plain error that affected the defendant's substantial rights, that is, the error affected the outcome of the lower court proceedings." Reversal is appropriate only if the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. [*People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008 (citations omitted).]

"Both the United States and the Michigan constitutions protect a defendant from being placed twice in jeopardy, or subject to multiple punishments, for the same offense." *Id*. at 682. " 'Judicial examination of the scope of double jeopardy protection under both constitutions is confined to a determination of legislative intent.' " *Id.*, quoting *People v Parker*, 230 Mich App 337, 342; 584 NW2d 336 (1998). "[T]he validity of multiple punishments under the Michigan Constitution is determined under the federal *Blockburger*[2] "same elements" standard." *Id.* at 682-683. In *Blockburger*, the United States Supreme Court stated, "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). The *Blockburger* test is called the "same elements" test because it examines the abstract elements of the offenses, rather than the facts actually adduced at trial. See *People v Smith*, 478 Mich 292, 306, 311; 733 NW2d 351 (2007). The *Blockburger* test is satisfied, and there is no double-jeopardy violation, when each offense "requires proof of a fact that the other does not"—in other words, when each offense contains an element the other does not. *McGee*, 280 Mich App at 683.

All three of defendant's convictions were based on MCL 333.7401c(1) and (2), which provide as follows:

(1) A person shall not do any of the following:

(a) Own, possess, or use a vehicle, building, structure, place, or area that he or she knows or has reason to know is to be used as a location to manufacture a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402.

---

[2] *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

(b) Own or possess any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402.

(c) Provide any chemical or laboratory equipment to another person knowing or having reason to know that the other person intends to use that chemical or laboratory equipment for the purpose of manufacturing a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402.

(2) A person who violates this section is guilty of a felony punishable as follows:

(a) Except as provided in subdivisions (b) to (f), by imprisonment for not more than 10 years or a fine of not more than $100,000.00, or both.

(b) If the violation is committed in the presence of a minor, by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both.

(c) If the violation involves the unlawful generation, treatment, storage, or disposal of a hazardous waste, by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both.

(d) If the violation occurs within 500 feet of a residence, business establishment, school property, or church or other house of worship, by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both.

(e) If the violation involves the possession, placement, or use of a firearm or any other device designed or intended to be used to injure another person, by imprisonment for not more than 25 years or a fine of not more than $100,000.00, or both.

(f) If the violation involves or is intended to involve the manufacture of a substance described in section 7214(c)(*ii*) [methamphetamine], by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both.

Defendant argues that this issue was resolved by this Court in *Meshell*, 265 Mich App at 628. In *Meshell*, the defendant was convicted of operating a meth lab and operating a meth lab within 500 feet of a residence. *Id.* at 618. This Court held that the two offenses were the "same offense." *Id.* at 628. The Court examined the statutory language and concluded (a) that the offense of operating a methamphetamine laboratory did not contain an element different from operating a methamphetamine laboratory within 500 feet of a residence, and (b) that the structure of the statute indicates that the Legislature did not intend multiple punishments for these two offenses. *Id.* at 631. The Court stated, "Given that the elements of operating or maintaining a methamphetamine laboratory are encompassed within the elements of operating or maintaining a methamphetamine laboratory within five hundred feet of a residence, the presumption is that the Legislature did not intend multiple punishments." *Id.* Regarding the legislative intent, the Court held that MCL 333.7401c(1) provides the base elements of the statute and that MCL

-4-

333.7401c(2)(b-f) provide increased punishment based on certain aggravating factors (e.g. manufacturing the controlled substance in the presence of a minor, § (2)(b), or manufacturing a controlled substance within 500 feet of a residence, § (2)(d)). *Id.* at 632.

Contrary to defendant's argument, *Meshell* does not control. Instead, what controls is the Supreme Court's decision in *People v Routley*, 485 Mich 1075; 777 NW2d 160 (2010). In that summary decision, the Court held—while noting the holding in *Meshell*—that separate convictions under MCL 333.7401c(2)(d) and (f) do not violate double jeopardy principles because a conviction under (2)(f) requires proof that the lab was used to produce *only* meth while a conviction under 2(d) does not. *Routley*, 485 Mich at 1076. Additionally, the Court held that a conviction under 2(d) requires proof that the lab was within 500 feet of a prohibited structure, while a conviction under 2(f) does not. *Id*. Because defendant's convictions were under 2(d) and (f), we must follow the clear enunciation within *Routley*, and defendant's argument fails under that decision.

## IV. DEFENDANT'S DRUG-TEST REPORT AND EXPERT TESTIMONY

Defendant independently had a body hair sample tested by Omega Laboratories in Ohio. The test report stated that the sample was "negative" for methamphetamines within an approximate 12-month timeframe. The sample was reportedly taken from defendant's chest nine months following defendant's arrest. The week before trial, the defense moved for an adjournment because it had been unable to communicate with the analyst at Omega Labs who had analyzed defendant's hair sample. The trial court denied the request for an adjournment stating that it could not wait for experts to "get[] around to looking at" dated reports and noting that it was unknown whether the witness would be accepted given scientific validity and relevancy questions.

The defense was ultimately able to arrange for the analyst to testify by videoconference, but the prosecution asserted that the laboratory's own website stated that body hair testing could not be relied on to give an accurate timeframe of drug use because of the variability of body hair growth. The court agreed that the analyst and his laboratory met the standards for scientific reliability under MRE 702, but excluded the report and testimony holding that the body-hair sample was insufficiently reliable based on the laboratory's own literature regarding body-hair testing. Because of the uncertainty, the court held that the test results would not be sufficiently probative to rebut Korpela's testimony that she and defendant had used meth together in December 2012.

"[A] trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). An abuse of discretion occurs when the court's ruling falls outside the range of reasonable and principled outcomes. See *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "An error in the admission or exclusion of evidence will not warrant reversal unless refusal to do so appears inconsistent with substantial justice or affects a substantial right of the opposing party." *Dobek*, 274 Mich App at 93.

Defendant frames the issue in terms of his constitutional right to present a defense.

-5-

The right to present a defense limits the otherwise broad latitude of states to establish rules that exclude evidence from criminal trials. When rules infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve, they must yield to the constitutional right. However, while the right to present a defense is a fundamental part of due process, it is not an absolute right, and the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. [*People v Kowalski*, 492 Mich 106, 139; 821 NW2d 14 (2012) (opinion by MARY BETH KELLY, J.) (citations, internal quotation marks, and alteration marks omitted).]

"[E]very proper application of MRE 702 requires a careful consideration of the reliability of the proffered evidence." *Id.* at 140. The right to present a defense is not abridged when the court excludes unreliable or irrelevant evidence. *Id.* at 141. Accordingly, if the trial court properly excluded the testimony and lab report, defendant's right to present a defense was not abridged.

"The trial court has an obligation under MRE 702 'to ensure that any expert testimony admitted at trial is reliable.' " *Dobek*, 274 Mich App at 94, quoting *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004). "Expert testimony may be excluded when it is based on assumptions that do not comport with the established facts or when it is derived from unreliable and untrustworthy scientific data." *Dobek*, 274 Mich App at 94 (citation omitted).

[A] court evaluating proposed expert testimony must ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case. [*Kowalski*, 492 Mich at 120, citing MRE 702.]

"[T]rial courts have an obligation to exercise their discretion as a gatekeeper and ensure that any expert testimony admitted at trial is reliable." *People v Yost*, 278 Mich App 341, 394; 749 NW2d 753 (2008) (citation omitted).

Based on the laboratory's own statement that body-hair testing "cannot be utilized to determine a specific timeframe of drug use," excluding the report and the expert testimony was not outside the range of reasonable principled outcomes. *Babcock*, 469 Mich at 269. The laboratory's website stated that body hair samples can show the presence of drugs for approximately 12 months but cannot provide a specific timeframe because of the variability of body hair growth. Because of this unreliability, a negative test result would only have been marginally probative of defendant's drug use. Further, whether defendant used meth in November and December 2012 is not relevant to an element of any of the offenses. The probative value only relates to a potential motive and to Korpela's credibility. The trial court did not abuse its discretion.

## V. EVIDENCE FOUND IN DEFENDANT'S CELL PHONE

Defendant moved to suppress evidence taken from three cell phones that were seized by the police from defendant's hotel room. Defendant argued that the search warrant did not

authorize the police to search the contents of the phones, but only to search for the phones. The court denied the motion to suppress holding that the warrant, which referred to "computer generated data" and "[t]elephones used to conduct drug transactions," covered the contents of defendant's cell phones.

"A trial court's ruling on a motion to suppress evidence is reviewed for clear error, but its conclusions of law are reviewed de novo." *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272, 296 (2008). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Tuttle*, 304 Mich App 72, 80; 850 NW2d 484 (2014) (internal quotation marks omitted).

Defendant did not argue below, and does not argue on appeal, that the search warrant was not supported by probable cause. Defendant's contention is that the warrant did not state with particularity that the contents of the cell phone could be searched. A search warrant must state with particularity the places to be searched and the persons or things to be seized. *Unger*, 278 Mich App at 245; US Const, Am IV. "The purpose of the particularity requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *Unger*, 278 Mich App at 245 (citations omitted).

The United States Supreme Court recently stated, "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Riley v California*, __US__, __; 134 S Ct 2473, 2495; 189 L Ed 2d 430 (2014). Defendant argues that *Riley* requires the police to obtain a warrant that specifically authorizes a search of the contents of a cell phone. Defendant's reliance on *Riley* is for two reasons misplaced. First, defendant's motel room was not searched incident to his arrest, and *Riley* only holds that the search-incident-to-lawful-arrest exception to the Fourth Amendment's warrant requirement does not extend to the contents of a cell phone found on the arrestee. *Riley* does not require any greater degree of specificity for the search of a cell phone than would be required for any other area of privacy protected by the Fourth Amendment. *Id.* Second, the police had a warrant that authorized them to search for computers, computer generated data, and, notably, "[t]elephones used to conduct drug transactions." A magistrate issuing such a warrant would reasonably believe that the officers not only intended to seize the phones, but also to search them for evidence. Further, the relevant images found on defendant's cell phone would also fall under the heading of computer-generated data. As the *Riley* Court pointed out, "The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Riley*, 134 S Ct at 2489. Accordingly, the trial court did not err by admitting evidence found on defendant's cell phone.

## VI. INEFFECTIVE ASSISTANCE

Finally, defendant argues in a catch-all fashion that trial counsel was ineffective. Defendant has failed to adequately brief this issue, providing this Court with no specific information about how counsel's performance fell below an objective standard of reasonableness or how such a failure prejudiced defendant. *Strickland v Washington*, 466 US 668, 690; 104 S Ct

2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). Defendant's claim is, therefore, abandoned. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims.").

Affirmed.


/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Christopher M. Murray