# Syllabus

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

PEOPLE v BYLSMA

Docket No. 144120. Argued October 11, 2012. Decided December 19, 2012.

Ryan M. Bylsma, a registered primary caregiver under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*., was charged in the Kent Circuit Court with manufacturing marijuana in violation of MCL 333.7401(1) and (2)(d). Defendant moved to dismiss the charge, asserting that as the registered primary caregiver of two registered qualifying patients, he was allowed to possess 24 marijuana plants and that the remainder of the 88 plants seized by the police from his leased unit in a building belonged to other registered primary caregivers and registered qualifying patients whom defendant had offered to assist in growing and cultivating the plants. The court, George S. Buth, J., denied the motion, holding that the MMMA contains the strict requirement that each set of 12 plants permitted under the MMMA to meet the needs of a specific qualifying patient must be kept in an enclosed, locked facility that can only be accessed by one person, that defendant had failed to comply with that requirement, and that defendant was therefore not entitled to invoke either the immunity provided by § 4(b) of the MMMA, MCL 333.26424(b), or the affirmative defense contained in § 8 of the MMMA, MCL 333.26428. Defendant appealed by leave granted. The Court of Appeals, GLEICHER, P.J., and HOEKSTRA and STEPHENS, JJ., affirmed, holding that defendant was not entitled to § 4 immunity because the MMMA did not authorize him to possess the marijuana plants that were being grown and cultivated for registered qualifying patients whom he was not connected to through the Michigan Department of Community Health (MDCH) registration process and that his failure to meet the requirements of § 4 immunity made him ineligible to raise the § 8 defense. 294 Mich App 219 (2011). Defendant sought leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant the application for leave to appeal or take other peremptory action. 492 Mich 871 (2012).

In a unanimous opinion by Chief Justice YOUNG, the Supreme Court *held*:

In order to receive immunity under § 4 of the MMMA, a registered primary caregiver may not possess more than 12 marijuana plants for each qualifying patient to whom he or she is connected through the state's registration process. However, a defendant need not establish the elements of § 4 immunity in order establish the elements of a § 8 defense.

1. The MMMA introduced into Michigan law an exception to the Public Health Code's prohibition on the use of controlled substances by permitting the medical use of marijuana when carried out in accordance with the MMMA's provisions. Section 4(b) of the MMMA limits the

amount of marijuana that a registered primary caregiver may possess and still be entitled to § 4 immunity. In particular, § 4(b)(2) limits the number of marijuana plants that a registered primary caregiver may possess to 12 plants for each registered qualifying patient connected to the primary caregiver through the MDCH registration process. Section 4(a) concerns registered qualifying patients and contains similar limitations on the possession of marijuana plants. Thus, the Court of Appeals correctly held that only one of two people may possess a patient's 12 marijuana plants for purposes of immunity under §§ 4(a) and 4(b): the registered qualifying patient himself or herself if the patient has not specified that a primary caregiver be allowed to cultivate the patient's plants or the patient's registered primary caregiver if the patient has specified that a primary caregiver be allowed to cultivate the patient's plants.

2. The MMMA incorporates the definition of possession of controlled substances used in longstanding Michigan law. The essential inquiry is whether there is a sufficient nexus between the defendant and the contraband, including whether the defendant exercised dominion and control over it. In this case, defendant exercised dominion and control over all the marijuana plants seized from the warehouse space that he leased, given that he was actively engaged in growing all the marijuana in the facility; used his horticultural knowledge and expertise to oversee, care for, and cultivate all the marijuana growing there; and had the ability to remove any or all of the plants given his unimpeded access to the warehouse space. For defendant, who was connected to two qualifying patients through the MDCH's registration process, § 4(b) permitted him to possess no more than 24 plants. Because defendant clearly possessed more plants than allowed under § 4 and possessed plants on behalf of patients with whom he was not connected through the state's registration process, defendant was not entitled to § 4 immunity.

3. Because § 4 limits both the amount of marijuana that any individual may possess and who may possess any marijuana plant, for a patient or caregiver to receive immunity under § 4, the enclosed, locked facility housing marijuana plants required by MCL 333.26423(c) and MCL 333.26424(b)(2) must be such that it allows only one person to possess the marijuana plants enclosed therein: the registered qualifying patient himself or herself if the patient has not specified that a primary caregiver be allowed to cultivate the patient's marijuana plants or the patient's registered primary caregiver if the patient has specified that a primary caregiver be allowed to cultivate the patient's plants.

4. To establish the elements of the affirmative defense in § 8 of the MMMA, a defendant need not establish the elements of § 4. As long as the defendant can establish the elements of the § 8 defense and none of the circumstances in § 7(b) of the MMMA, MCL 333.26427(b), exists, the defendant is entitled to dismissal of criminal charges. In this case, although defendant reserved the right to assert a § 8 defense, he had not done so. Given that defendant had not yet proceeded to trial, he still had the opportunity to assert the defense in a motion to dismiss.

Court of Appeals' judgment affirmed with regard to immunity under § 4 of the MMMA, reversed to the extent that it held that defendant was precluded from asserting a defense under § 8 of the MMMA, and case remanded for further proceedings.

©2012 State of Michigan

# Opinion

Chief Justice:      Justices:
Robert P. Young, Jr.  Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED DECEMBER 19, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                     No. 144120

RYAN MICHAEL BYLSMA,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

In this prosecution for the manufacture of marijuana in violation of the Public Health Code, MCL 333.7401(1) and (2)(d), we must determine whether § 4 of the Michigan Medical Marihuana Act (MMMA)[1] provides a registered primary caregiver with immunity when growing marijuana collectively with other registered primary caregivers and registered qualifying patients. We hold that § 4 does not contemplate such collective action. As a result, defendant is not entitled to its grant of immunity from

---

[1] MCL 333.26424.

arrest, prosecution, or penalty, and we affirm the judgment of the Court of Appeals to the extent that it concluded that defendant was not entitled to § 4 immunity.

The MMMA authorizes "[t]he medical use of marihuana . . . to the extent that it is carried out in accordance with [its] provisions . . . ."[2]  In order to receive immunity under § 4, a registered primary caregiver may not possess more than 12 marijuana plants for each qualifying patient to whom he is connected through the state's registration process. We agree with the Court of Appeals that defendant exercised dominion and control over all the plants in the warehouse space that he leased, not merely the plants in which he claimed an ownership interest.  Section 4 does not allow the collective action that defendant has undertaken because only one of two people may possess marijuana plants pursuant to §§ 4(a) and 4(b): a registered qualifying patient or the primary caregiver with whom the qualifying patient is connected through the registration process of the Michigan Department of Community Health (MDCH).  Because defendant possessed more plants than § 4 allows and he possessed plants on behalf of patients with whom he was *not* connected through the MDCH's registration process, defendant is not entitled to § 4 immunity.

In addition to immunity under § 4, the MMMA created a second protection for primary caregivers of medical marijuana patients: an affirmative defense from prosecution under § 8.[3]  The Court of Appeals erred when it concluded that defendant was not entitled to assert the § 8 affirmative defense solely because he did not satisfy the

---

[2] MCL 333.26427(a).

[3] MCL 333.26428.

2

possession limits of § 4. Rather, in *People v Kolanek*, we held that a defendant need not establish the elements of § 4 immunity in order to establish the elements of the § 8 defense.[4] Accordingly, we reverse the Court of Appeals' judgment to the extent that it conflicts with *Kolanek.* However, it would be premature for this Court to determine whether defendant has in fact satisfied the elements of the § 8 defense because he has not formally asserted the § 8 defense in a motion to dismiss. Instead, he has simply reserved the right to raise a § 8 defense at a later time. Accordingly, we remand this case to the Kent Circuit Court for further proceedings consistent with this opinion and with *Kolanek*.

## I. FACTS AND PROCEDURAL HISTORY

Pursuant to § 6 of the MMMA, a qualifying patient and his primary caregiver, if any, can apply to the MDCH for a registry identification card.[5] Defendant Ryan Bylsma did so and, at all relevant times for the purposes of this appeal, was registered with the MDCH as the primary caregiver for two registered qualifying medical marijuana patients. He leased commercial warehouse space in Grand Rapids and equipped that space both to grow marijuana for his two patients and to allow him to assist other qualifying patients and primary caregivers in growing marijuana.[6] A single lock secured the warehouse space, which was divided into three separate booths. The booths were latched but not locked, and defendant moved plants between the booths depending on the growing

---

[4] *People v Kolanek*, 491 Mich 382, 403; 817 NW2d 528 (2012).

[5] MCL 333.26426.

[6] Defendant received specialized training in growing and cultivating marijuana in California.

3

conditions that each plant required. Defendant spent 5 to 7 days each week at the warehouse space, where he oversaw and cared for the plants' growth. Sometimes, defendant's brother would help defendant care for and cultivate the plants. Defendant had access to the warehouse space at all times, although defense counsel acknowledged that two others also had access to the space.

In September 2011, a Grand Rapids city inspector forced entry into defendant's warehouse space after he noticed illegal electrical lines running along water lines.[7] The inspector notified Grand Rapids police of the marijuana that was growing there. The police executed a search warrant and seized approximately 86 to 88 plants.[8] Defendant claims ownership of 24 of the seized plants and asserts that the remaining plants belong to the other qualifying patients and registered caregivers whom he was assisting.

Defendant was charged with manufacturing marijuana in violation of the Public Health Code, MCL 333.7401(1) and (2)(d), subject to an enhanced sentence under MCL 333.7413 for a subsequent controlled substances offense.[9] Defendant moved to dismiss

---

[7] Defendant has filed a separate pretrial motion to suppress this entry and subsequent seizure. However, that motion to suppress is not part of his appeal in this Court, which involves only his motion to dismiss.

[8] Although the evidentiary hearing testimony and Court of Appeals' decision reflect that the police seized 88 marijuana plants, there is other evidence in the record indicating the seizure of only 86 plants. Because this appeal does not turn on the difference between 86 and 88 plants, we need not be concerned with this outstanding factual question.

[9] The record indicates that defendant was convicted of a misdemeanor offense for using marijuana in 2005. In order to become a primary caregiver under the MMMA, a person must "[have] never been convicted of a felony involving illegal drugs." MCL 333.26423(g).

4

the charges under the MMMA's grant of immunity in § 4, claiming that he possessed 24 of the seized plants, that other registered qualifying patients and registered primary caregivers owned the remaining plants, and that all of them used the warehouse space as a common enclosed, locked facility. Defendant also reserved the right to raise the affirmative defense provided by § 8 of the MMMA. After conducting an evidentiary hearing, the Kent Circuit Court denied defendant's motion to dismiss, holding that § 4 of the MMMA requires each registered qualifying patient's plants to be "kept in an enclosed, locked facility that can only be accessed by one individual . . . ." Furthermore, the court held that because defendant had not complied with § 4, he was not entitled to raise an affirmative defense under § 8.

The Court of Appeals affirmed the circuit court's decision.[10] The panel determined that defendant possessed all the seized marijuana plants because "[h]e knew of the presence and character of the plants and he exercised dominion and control over them."[11] The panel explained that § 4 immunity only permits a registered primary caregiver to possess up to 12 plants for each qualifying patient to whom he is connected through the MDCH's registration process. The panel concluded that defendant was not entitled to § 4 immunity because the MMMA did not authorize him "to possess the marijuana plants that were being grown and cultivated for registered qualifying patients that he was not connected to through the MDCH's registration process[.]"[12] Finally, the

---

[10] *People v Bylsma*, 294 Mich App 219; 816 NW2d 426 (2011).

[11] *Id.* at 230.

[12] *Id.* at 233. Because the issue whether § 4 requires each patient's 12 plants to be in a separate enclosed, locked facility was irrelevant to defendant's possession of those plants,

5

panel held that defendant's failure to meet the requirements of § 4 immunity made him ineligible to raise the § 8 defense.[13]

This Court ordered oral argument on defendant's application for leave to appeal, asking that the parties address the following:

> (1) whether the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, permits qualifying patients and registered primary caregivers to possess and cultivate marijuana in a collective or cooperative and (2) whether, under the circumstances of this case, the defendant was entitled to immunity from prosecution for manufacturing marijuana under § 4 of the MMMA, MCL 333.26424, or entitled to dismissal of the manufacturing charge under the affirmative defense in § 8 of the act, MCL 333.26428.[14]

## II. STANDARD OF REVIEW

We review for an abuse of discretion a circuit court's ruling on a motion to dismiss[15] but review de novo the circuit court's rulings on underlying questions regarding the interpretation of the MMMA,[16] which the people enacted by initiative in November 2008.[17] "[T]he intent of the electors governs" the interpretation of voter-initiated statutes,[18] just as the intent of the Legislature governs the interpretation of legislatively

---

the panel declined to reach the circuit court's resolution of that issue.

[13] *Id*. at 236.

[14] *People v Bylsma*, 492 Mich 871 (2012).

[15] See *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288 (1991).

[16] *Kolanek*, 491 Mich at 393.

[17] See Const 1963, art 2, § 9 ("The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative . . . .").

[18] *Kolanek*, 491 Mich at 405.

6

enacted statutes.[19] A statute's plain language provides "'the most reliable evidence of . . . intent . . . .'"[20] "If the statutory language is unambiguous, . . . '[n]o further judicial construction is required or permitted'" because we must conclude that the electors "'intended the meaning clearly expressed.'"[21]

A trial court's findings of fact may not be set aside unless they are clearly erroneous.[22] A ruling is clearly erroneous "if the reviewing court is left with a definite and firm conviction that the trial court made a mistake."[23]

### III. ANALYSIS

### A. THE MMMA

Michigan voters approved the MMMA in November 2008. As a result, the MMMA introduced into Michigan law an exception to the Public Health Code's prohibition on the use of controlled substances by permitting the medical use of marijuana when carried out in accordance with the MMMA's provisions.[24] This Court first interpreted the MMMA in *Kolanek* and emphasized that the MMMA exists only as an exception to, and not a displacement of, the Public Health Code:

---

[19] *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011), citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[20] *Sun Valley Foods*, 460 Mich at 236, quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).

[21] *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012), quoting *Sun Valley Foods*, 460 Mich at 236 (alteration in original).

[22] MCR 2.613(C); *People v Dawson*, 431 Mich 234, 258; 427 NW2d 886 (1988).

[23] *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

[24] MCL 333.26427(a).

The MMMA does *not* create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law. Rather, the MMMA's protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use "is carried out in accordance with the provisions of [the MMMA]."[25]

In contrast to some other states' medical marijuana provisions, the MMMA does not explicitly provide for collective growing operations such as defendant's.[26] Nevertheless, defendant claims that his actions fall within the immunity provision contained in § 4 of the MMMA or, alternatively, within the affirmative-defense provision contained in § 8.

In *Kolanek*, we established the relationship between these two separate protections from prosecution for offenses involving marijuana. Because "the plain language of § 8 does not require compliance with the requirements of § 4," a defendant who is unable to satisfy the requirements of § 4 may nevertheless assert the § 8 affirmative defense.[27] Accordingly, we must examine these provisions independently.

Sections 4(a) and 4(b) contain parallel immunity provisions that apply, respectively, to registered qualifying patients and to registered primary caregivers.

---

[25] *Kolanek*, 491 Mich at 394, quoting MCL 333.26427(a) (alteration in original).

[26] For instance, California specifically contemplates that "[q]ualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identifications cards" may "associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes . . . ." Cal Health & Safety Code 11362.775. Colorado goes one step further and specifically allows medical marijuana dispensaries to engage in common growing operations. Colo Rev Stat 12-43.3-403(2).

[27] *Kolanek*, 491 Mich at 401.

8

Defendant claims that § 4(b) entitles him to immunity as a registered primary caregiver.[28]

Section 4(b) provides:

> A primary caregiver who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for assisting a qualifying patient to whom he or she is connected through the department's registration process with the medical use of marihuana in accordance with this act, *provided that the primary caregiver possesses an amount of marihuana that does not exceed*:

> (1) 2.5 ounces of usable marihuana for each qualifying patient to whom he or she is connected through the department's registration process; and

> (2) for each registered qualifying patient *who has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient*, 12 marihuana plants kept in an enclosed, locked facility; and

> (3) any incidental amount of seeds, stalks, and unusable roots.[29]

The plain language of § 4(b) limits the amount of marijuana that a registered primary caregiver can possess and still be entitled to § 4 immunity. In particular, § 4(b)(2) limits the number of marijuana plants that a registered primary caregiver may possess to 12 plants for each registered qualifying patient connected to the primary caregiver through the MDCH's registration process. Specifically, a caregiver may possess those plants *only*

---

[28] Defendant does not claim to be a registered qualifying patient. Accordingly, he is not eligible for immunity under MCL 333.26424(a), which applies only to "[a] qualifying patient who has been issued and possesses a registry identification card . . . ."

[29] MCL 333.26424(b) (emphasis added).

if the registered qualifying patient "has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient . . . ."[30]

Section 4(a) applies to registered qualifying patients and contains similar limitations on the possession of marijuana plants: a registered qualifying patient may possess up to "12 marihuana plants kept in an enclosed, locked facility," but only if "the qualifying patient has *not* specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient . . . ."[31] Thus, the Court of Appeals correctly held that only one of two people may possess a patient's 12 marijuana plants for the purposes of immunity under §§ 4(a) and 4(b): "either the registered qualifying patient himself or herself, if the qualifying patient has not specified that a primary caregiver be allowed to cultivate his or her marijuana plants, or the qualifying patient's registered primary caregiver, if the qualifying patient has specified that a primary caregiver be allowed to cultivate his or her marijuana plants."[32]

Section 4(d) reiterates these limitations in articulating a presumption of "medical use":

> There shall be a presumption that a qualifying patient or primary caregiver is engaged in the medical use of marihuana in accordance with this act if the . . . primary caregiver: (1) is in possession of a registry identification card; and (2) is in possession of an amount of marihuana *that does not exceed the amount allowed under this act*. The presumption may be rebutted by evidence that conduct related to marihuana was not for the purpose of alleviating the qualifying patient's debilitating medical

---

[30] MCL 333.26424(b)(2).

[31] MCL 333.26424(a) (emphasis added).

[32] *Bylsma*, 294 Mich App at 232.

condition or symptoms associated with the debilitating medical condition, in accordance with this act.[33]

In this case, application of § 4 turns on the amount of marijuana that defendant possessed. Sections 4(b)(2) and 4(d) limit defendant to 12 plants for each of the two patients with whom he is connected through the MDCH's registration process, a total of 24 plants. Defendant claims that he is entitled to § 4 immunity and that he possessed only the 24 plants that he is allowed to possess under the MMMA. The prosecution asserts that defendant possessed all the plants in the warehouse space, thereby exceeding the limitations established in § 4. In order to evaluate these claims, we must determine what constitutes "possession" within the meaning of the MMMA.

## B. POSSESSION

Although possession of marijuana is one of nine activities that constitute the "medical use" of marijuana under § 3(e) of the MMMA,[34] the MMMA does not itself define "possession." When a statute does not define a term at issue,

> [a]ll words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.[35]

---

[33] MCL 333.26424(d) (emphasis added).

[34] Section 3(e), MCL 333.26423(e), defines "medical use" as "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition."

[35] MCL 8.3a.

Longstanding Michigan law *has* provided a specific meaning regarding possession of controlled substances, and we hold that the MMMA incorporates this settled Michigan law regarding possession: a person possesses marijuana when he exercises dominion and control over it.

In *People v Wolfe*, this Court articulated basic principles regarding the possession of controlled substances:

> A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive. *People v Harper*, 365 Mich 494, 506-507; 113 NW2d 808 (1962), cert den 371 US 930 (1962); see also *People v Mumford*, 60 Mich App 279, 282-283; 230 NW2d 395 (1975). Likewise, possession may be found even when the defendant is not the owner of recovered narcotics. *Id.* See also *People v Germaine*, 234 Mich 623, 627; 208 NW 705 (1926). Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance. *Id.* See also *People v Williams*, 188 Mich App 54, 57; 469 NW2d 4 (1991).[36]

Furthermore, "a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession."[37] Rather, the essential inquiry into possession is whether there is "a sufficient nexus between the defendant and the contraband,"[38] including whether "'the defendant exercised a dominion and control over the substance.'"[39] In this case, the Court of Appeals held that this traditional definition of possession applies to the MMMA, and we agree with this holding.

---

[36] *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992).

[37] *Id.* at 520.

[38] *Id.* at 521.

[39] *Id.*, quoting *United States v Disla*, 805 F2d 1340, 1350 (CA 9, 1986).

Defendant claims that this Court should not apply caselaw regarding possession of controlled substances to MMMA cases because the possession of marijuana is no longer illegal per se under state law. However, we explained in *Kolanek* that "[t]he MMMA does *not* create a general right for individuals to use and possess marijuana in Michigan."[40] Indeed, marijuana remains a schedule 1 controlled substance under the Public Health Code,[41] which defendant is charged with violating. The MMMA's limited exceptions for the medical use of marijuana do not provide a basis for this Court to redefine what constitutes the possession of marijuana; instead, these limited exceptions show that the drafters and voters intended that the MMMA to exist within the traditional framework regarding possession of marijuana and other controlled substances. Therefore, we reaffirm the traditional definition of possession as it relates to controlled substances and conclude that a person possesses controlled substances when he has dominion and control over them.

## C. APPLICATION

In determining whether defendant possessed all the marijuana in the warehouse space that he leased, we must consider whether "a sufficient nexus" exists between the defendant and the marijuana, including whether he exercised "'dominion and control'" over it.[42] The facts of this case leave no doubt that defendant exercised dominion and

---

[40] *Kolanek*, 491 Mich at 394

[41] MCL 333.7212(1)(c).

[42] *Wolfe*, 440 Mich at 521, quoting *Disla*, 805 F2d at 1350.

control over all the marijuana plants seized from the warehouse space that he leased. The Court of Appeals explained:

> Defendant admitted that he leased Unit 15E for the purpose of growing marijuana plants, and he was at Unit 15E five to seven days a week. The 88 plants were distributed among three grow booths, and although the grow booths were latched, defendant testified that they were not locked. There was no evidence that defendant was denied access to any of the marijuana plants. Under the circumstances, defendant clearly possessed all 88 marijuana plants. He knew of the presence and character of the plants and he exercised dominion and control over them.[43]

We agree with the Court of Appeals' conclusion that these circumstances establish defendant's possession of all the seized marijuana plants. Defendant was actively engaged in growing all the marijuana in the facility and used his horticultural knowledge and expertise to oversee, care for, and cultivate all the marijuana growing there. He had the ability to remove any or all of the plants, given his unimpeded access to the warehouse space.

As stated, § 4(b) allows defendant to possess up to 12 marijuana plants for each qualifying patient to whom he is connected through the MDCH's registration process. For defendant, who was connected to two qualifying patients through the MDCH's registration process, § 4(b) permitted him to possess no more than 24 plants. He clearly exceeded this amount by possessing all the marijuana in the warehouse space.

Defendant's possession of marijuana that purportedly belonged to registered patients with whom defendant was *not* connected through the MDCH's registration

_____

[43] *Bylsma*, 294 Mich App at 230. Whether police seized 86 or 88 plants is wholly immaterial when § 4(b) of the MMMA allows defendant to possess no more than 24 plants.

process further illustrates both why defendant is not entitled to immunity under § 4 and why § 4 does not contemplate the collective growing operation that defendant undertook. When considered together, §§ 4(a) and 4(b) only allow one of two people to possess a patient's 12 marijuana plants: "either the registered qualifying patient himself or herself, if the qualifying patient has not specified that a primary caregiver be allowed to cultivate his or her marijuana plants, or the qualifying patient's registered primary caregiver, if the qualifying patient has specified that a primary caregiver be allowed to cultivate his or her marijuana plants."[44] Defendant admitted that most of the plants in his warehouse space were for patients other than those with whom he was connected through the MDCH's registration process. By growing marijuana for those other patients, defendant possessed more plants than he was permitted to possess under § 4 of the MMMA.

Nevertheless, defendant asserts that the definition of "enclosed, locked facility" in § 3(c) of the MMMA allows multiple patients and caregivers to combine their marijuana into a single enclosed, locked facility as long as only registered qualifying patients and registered primary caregivers are allowed access to the enclosed, locked facility.[45] As stated, however, § 4 limits both the *amount* of marijuana that any individual registered qualifying patient or registered primary caregiver may possess and *who* may possess any marijuana plant. Thus, for a patient or caregiver to receive immunity under § 4, the "enclosed, locked facility" housing marijuana plants must be such that it allows only one

---

[44] *Bylsma*, 294 Mich App at 232.

[45] Section 3(c) of the MMMA, MCL 333.26423(c), defines "enclosed, locked facility" as "a closet, room, or other enclosed area equipped with locks or other security devices that permit access only by a registered primary caregiver or registered qualifying patient."

person to possess the marijuana plants enclosed therein—"either the registered qualifying patient himself or herself, if the qualifying patient has not specified that a primary caregiver be allowed to cultivate his or her marijuana plants, or the qualifying patient's registered primary caregiver, if the qualifying patient has specified that a primary caregiver be allowed to cultivate his or her marijuana plants."[46]

Defendant also claims that § 8 entitles him to dismissal of the charges. While defendant's motion to dismiss expressly reserved his right to raise a § 8 defense, defendant has not yet formally done so and, moreover, the lower courts' subsequent rulings barred him from raising a defense under § 8 of the MMMA. We reverse in part the lower courts' rulings that defendant is necessarily barred even from raising a § 8 defense solely because he failed to satisfy the elements of § 4 immunity. In making their rulings, the lower courts did not have the benefit of this Court's decision in *Kolanek*, which held:

> [T]o establish the elements of the affirmative defense in § 8, a defendant need not establish the elements of § 4. Any defendant, regardless of registration status, who possesses more than 2.5 ounces of usable marijuana or 12 plants not kept in an enclosed, locked facility may satisfy the affirmative defense under § 8. As long as the defendant can establish the elements of the § 8 defense and none of the circumstances in § 7(b) [of the MMMA, MCL 333.26427(b)] exists, that defendant is entitled to the dismissal of criminal charges.[47]

---

[46] *Bylsma*, 294 Mich App at 232.

[47] *Kolanek*, 491 Mich at 403.

16

Accordingly, pursuant to *Kolanek*, and contrary to the lower courts' rulings, defendant need not satisfy the possession limits contained in § 4(b) in order to satisfy the elements of the § 8 affirmative defense.

Both parties ask this Court to rule on the substantive merits of defendant's § 8 defense. However, in *Kolanek*, we also stated that the MMMA requires a defendant to follow a particular procedure in asserting the § 8 affirmative defense:

> Section 8(b) provides that a person "*may* assert [this defense] in a motion to dismiss, and the charges *shall be dismissed following an evidentiary hearing* where the person shows the elements listed in subsection (a)." [MCL 333.26428(b).] This scheme makes clear that the burden of proof rests with the defendant, that the defendant "may" move to dismiss the charges by asserting the defense in a motion to dismiss, and that dismissal "shall" follow an evidentiary hearing. This last requirement is significant because it indicates that the § 8 defense cannot be asserted for the first time at trial, but must be raised in a pretrial motion for an evidentiary hearing.[48]

In this case, defendant's motion to dismiss only asserted a claim for § 4 immunity, and the subsequent evidentiary hearing focused on the elements of § 4 immunity. Although defendant reserved the right to assert the § 8 affirmative defense, he has not yet asserted the defense in a motion to dismiss, as *Kolanek* requires. Because defendant has not yet proceeded to trial, he still has the opportunity to assert the defense in a motion to dismiss. As a consequence, it would be premature for this Court to decide whether he satisfies the substantive elements of the § 8 defense.

---

[48] *Id.* at 410-411 (first alteration in original).

17

IV. CONCLUSION

We affirm the judgment of the Court of Appeals in part, reverse it in part, and remand this case to the Kent Circuit Court for further proceedings. The Court of Appeals correctly held that defendant is not entitled to immunity under § 4(b) of the MMMA, MCL 333.26424(b). Section 4(b) allows a registered primary caregiver to possess up to 12 plants for each qualifying patient with whom he is connected through the state's registration process. A person possesses a controlled substance when he has the ability to exercise dominion and control over that controlled substance, and the Court of Appeals correctly determined that defendant exercised dominion and control over a quantity of marijuana plants in excess of that allowed pursuant to § 4(b).

We reverse the judgment of the Court of Appeals to the extent that it held, contrary to our decision in *Kolanek*, that defendant is necessarily precluded from asserting an affirmative defense pursuant to § 8 of the MMMA, MCL 333.26428, solely because he fails to satisfy the elements of § 4 immunity. Rather, § 8 contains independent elements that do not turn on the requirements of § 4 immunity. Because defendant has not yet asserted the § 8 affirmative defense in a motion to dismiss, as

18

*Kolanek* requires, it is premature for us to decide whether he is entitled to the defense. Rather, we remand this case to the Kent Circuit Court for further proceedings consistent with this opinion and with *Kolanek*.

Robert P. Young, Jr.
Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra