MARKMAN, J.
(concurring in part and dissenting in part). I agree with the majority opinion to the extent that it holds that “a defendant claiming that he or she is solely in the presence or vicinity of the medical use of marijuana is not entitled to immunity under MCL 333.26424(i) when the medical use of marijuana was not in accordance with the act[;] [n]or is a defendant entitled to immunity under MCL 333.26424(i) when the defendant’s conduct goes beyond assisting with the use or administration of marijuana,” and, therefore, “defendant is not entitled to immunity under § 4(i)....” However, I respectfully disagree with the majority opinion to the extent that it holds that “ ‘marihuana paraphernalia,’ as that phrase is used in MCL 333.26424(g), includes items that are both specifically designed or actually employed for the medical use of marijuana” and that because the sticky notes at issue here were “actually used in the cultivation or manufacture of marijuana,” they are “marihuana paraphernalia,” and, therefore, defendant is entitled to immunity *320 under MCL 333.26424(g). Instead, I would hold that “marihuana paraphernalia” as that phrase is used in MCL 333.26424(g) means “any equipment, product, material, or combination of equipment, products, or materials, which is specifically designed for use in planting; propagating; cultivating; growing; harvesting; manufacturing; compounding; converting; producing; processing; preparing; testing; analyzing; packaging; repackaging; storing; containing; concealing; injecting, ingesting, inhaling, or otherwise introducing [marijuana] into the human body,” MCL 333.7451 (emphasis added), and that because sticky notes are not “specifically designed” for any such use, they are not “marihuana paraphernalia,” and therefore defendant is not entitled to immunity under MCL 333.26424(g). Accordingly, I would affirm the judgment of the Court of Appeals.
The Michigan Medical Marihuana Act (MMMA) provides in pertinent part:
A person shall not be subject to arrest, prosecution, or penalty in any manner ... for providing a registered qualifying patient or a registered primary caregiver with marihuana paraphernalia for purposes of a qualifying patient’s medical use of marihuana. [MCL 333.26424(g) (emphasis added).]
Although the MMMA does not define “paraphernalia,” the Controlled Substances provisions that constitute Article 7 of the Public Health Code (PHC) do. It is well established that “[sjtatutes that address the same subject or share a common purpose are in pari materia and must be read together as a whole.” People v Harper, 479 Mich 599, 621; 739 NW2d 523 (2007). That is, “[i]t is a well-established rule that in the construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or *321 having the same general purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times, and contain no reference to one another.” IBM v Dep’t of Treasury, 496 Mich 642, 652; 852 NW2d 865 (2014), quoting Rathbun v Michigan, 284 Mich 521, 544; 280 NW 35 (1938) (emphasis added). “[Statutes in pari materia are to be taken together in ascertaining the intention of the legislature, and .. . courts will regard all statutes upon the same general subject matter as part of 1 system.” People v McKinley, 496 Mich 410, 421 n 11; 852 NW2d 770 (2014), quoting Dearborn Twp Clerk v Jones, 335 Mich 658, 662; 57 NW2d 40 (1953) (emphasis added). There is no doubt that the MMMA and Article 7 of the PHC pertain to the same general subject and have the same general purpose—the regulation of controlled substances, including, specifically, marijuana.
As this Court has explained, “the MMMA introduced into Michigan law an exception to the Public Health Code’s prohibition on the use of controlled substances by permitting the medical use of marijuana when carried out in accordance with the MMMA’s provisions.” People v Bylsma, 493 Mich 17, 27; 825 NW2d 543 (2012) (emphasis added). “[T]he MMMA exists only as an exception to, and not a displacement of, the Public Health Code.” Id. (emphasis added). An exception to a general rule cannot be fully understood when read in isolation from the general rule. This is exactly why every one of the opinions that this Court has written regarding the MMMA expressly refers to the PHC. See People v Kolanek, 491 Mich 382, 394 n 24; 817 NW2d 528 (2012) (“Marijuana remains a schedule 1 substance in Michigan’s Public Health Code, MCL 333.7212(l)(c).”); Michigan v McQueen, 493 Mich 135, 148; 828 NW2d 644 (2013) (“Marijuana is a controlled *322 substance as defined in MCL 333.7104 [of the PHC].”); Bylsma, 493 Mich at 27 (“[T]he MMMA introduced into Michigan law an exception to the Public Health Code’s prohibition on the use of controlled substances by permitting the medical use of marijuana when carried out in accordance with the MMMA’s provisions.”). The MMMA provides immunity, or an affirmative defense, to a violation of the PHC. Therefore, one cannot fully understand the MMMA, in particular its breadth of immunity and the scope of its affirmative defenses, without first understanding the PHC and its prohibitions.
Further, the Legislature’s stated purpose for the PHC is “the protection of the health, safety, and welfare of the people of this state.” MCL 333.1111(2). Likewise, the stated purpose of the MMMA is the protection of “the health and welfare of [the state’s] citizens.” MCL 333.26422(c). See also Kolanek, 491 Mich at 393-394, quoting MCL 333.26422(c) (“The purpose of the MMMA is to allow a limited class of individuals the medical use of marijuana, and the act declares this purpose to be an ‘effort for the health and welfare of [Michigan] citizens.’ ”). Thus, the MMMA and PHC have the same general purpose—the protection of the health and welfare of Michigan citizens. For these reasons, the MMMA and the PHC are in pari materia and must be read together as a whole.[1]
*323 As noted earlier in this opinion, while the MMMA *324 does not define the term “paraphernalia,” the PHC does. Specifically, the PHC defines “drug paraphernalia” as “any equipment, product, material, or combination of equipment, products, or materials, which is specifically designed for use in planting; propagating; cultivating; growing; harvesting; manufacturing; compounding; converting; producing; processing; preparing; testing; analyzing; packaging; repackaging; storing; containing; concealing; injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance . . . .” MCL 333.7451 (emphasis added).[2] In addition, MCL 333.7451 contains a nonex *325 elusive list of items that are considered to be “drug paraphernalia,” and each of the 13 pertinent subsections employs the phrase “specifically designed,” which underscores that only items that are “specifically designed” to be used with controlled substances constitute “drug paraphernalia.” Finally, MCL 333.7457(d) expressly excludes from the definition of “drug paraphernalia” things that are not “specifically designed for” drug production or use, such as bowls and spoons. Given these provisions, I agree with the Court of Appeals that “[o]bjects that serve as ordinary household and office supplies, such as sticky notes, are outside the ambit of what the Legislature contemplated when it *326 created the paraphernalia-immunity provision.” People v Mazur, unpublished opinion per curiam of the Court of Appeals, issued April 1, 2014 (Docket No. 317447), pp 3-4. Because sticky notes are not “specifically designed for use in planting; propagating; cultivating; growing; harvesting; manufacturing; compounding; converting; producing; processing; preparing; testing; analyzing; packaging; repackaging; storing; containing; concealing; injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance,” MCL 333.7451, they are not “marihuana paraphernalia” and accordingly defendant is not entitled to immunity under MCL 333.26424(g).[3]
As also noted earlier in this opinion, MCL 333.26424(g) provides in pertinent part:
A person shall not be subject to arrest, prosecution, or penalty in any manner ... for providing a registered qualifying patient or a registered primary caregiver with marihuana paraphernalia for purposes of a qualifying patient’s medical use of marihuana. [Emphasis added.]
For the reasons already explained, sticky notes do not constitute “marihuana paraphernalia” and for that reason alone defendant is not entitled to immunity under MCL 333.26424(g). However, I agree with Justice ZAHRA, also in dissent, that there is an additional reason why defendant is not entitled to immunity under *327 MCL 333.26424(g) and that is because defendant did not provide the sticky notes to her husband “for purposes of a qualifying patient’s medical use of marihuana.” (Emphasis added.) MCL 333.26423(e) defines “medical use” as “the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition.”[4] (Emphasis added.) This Court has already explained that “administering” marijuana “involv[es] the actual ingestion of marijuana.” McQueen, 493 Mich at 158. Therefore, even assuming that the sticky notes at issue here constitute “marihuana paraphernalia,” which, for the reasons already discussed I do not believe they do, they most certainly do not constitute “paraphernalia relating to the administration of marihuana” as they were in no way used, or intended to be used, to “administer” or “ingest” marijuana. That is, even assuming that the sticky notes are “marihuana paraphernalia,” defendant is still not entitled to immunity because she did not provide her husband with the sticky notes “for purposes of a qualifying patient’s medical use of marihuana” since “medical use” in this context means the “transfer .. . of. . . paraphernalia relating to the administration of marihuana,” and defendant’s transfer of the sticky notes to her husband was not done for purposes of administering marijuana.[5] Instead, if anything, defendant’s trans *328 fer of the sticky notes with harvest dates on them to her husband was done for purposes of assisting her husband in the cultivation or manufacture of marijuana. These sticky notes were not, nor were they ever intended to be, used to administer or ingest marijuana. Accordingly, for this additional reason, defendant is not entitled to immunity under MCL 333.26424(g).[6]
Because I agree with the Court of Appeals that defendant is not entitled to immunity under either MCL 333.26424(f) or MCL 333.26424(g), I would affirm the judgment of the Court of Appeals.

 The majority holds that the MMMA and the PHC are not in pari materia because they have “two diametrically opposed purposes.” In reaching this holding the majority relies on Palmer v State Land Office Bd, 304 Mich 628, 636; 8 NW2d 664 (1943), which held that “although an act may incidentally refer to the same subject as another act, it is not in pari materia if its scope and aim are distinct and unconnected(Emphasis added.) However, the MMMA and the PHC do not “incidentally refer to the same subject.” Rather, the whole purpose of Article 7 of the PHC is to regulate controlled substances, including marijuana; and the whole purpose of the MMMA is to regulate marijuana. The overlap or intersec *323 tion between these acts can in no way be described as “incidental.” The purposes of these acts also cannot be described as being “distinct and unconnected.” The purpose of both is to regulate marijuana. Just because one prohibits its use and the other allows it under limited and delineated circumstances does not make the “general purpose” of these acts “distinct and unconnected.” See id. at 636-637 (“[A]ll statutes ... having the same general purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times, and contain no reference to one another.”) (emphasis added). The majority’s very narrow construction of the in pari materia doctrine is at odds with this Court’s own prior constructions of the doctrine. For example, this Court has repeatedly recognized the “well-noted principle of construction that a subsequently enacted specific statute is regarded as an exception to a prior general one, especially if they are in pari materia.” Husted v Dobbs, 459 Mich 500, 516; 591 NW2d 642 (1999) (quotation marks and citation submitted) (this Court held in Husted that to the extent that the essential insurance act created an exception to the no-fault act, the two acts are in pari materia and thus should be read together); see also Rathbun, 284 Mich at 544 (this Court held in Rathbun that “[statutes in pari materia, although in apparent conflict, should, so far as reasonably possible, be construed in harmony with each other, so as to give force and effect to each”); Malcolm v East Detroit, 437 Mich 132, 145; 468 NW2d 479 (1991) (this Court held in Malcolm that although the emergency medical services act created an exception to governmental immunity that is not found in the governmental tort liability act, these acts are in pari materia and must be read together); State Bar v Galloway, 422 Mich 188, 193; 369 NW2d 839 (1985) (this Court held in Galloway that the Michigan Employment Security Act, which allows non-lawyers to represent employers in proceedings before Michigan Employment Security Commission referees, and the unauthorized-practice of law statutes are in pari materia and therefore must be read together). However, under the majority’s construction of this doctrine, a statute creating an exception to a prior general statute would never be in pari materia with the prior statute because the two would be “diametrically opposed.” Indeed, the majority’s construction of the in pari materia doctrine is inconsistent even with Palmer on which the majority relies. In Palmer, 304 Mich at 637, this Court held that “[wjhere a statute embraces only part of a subject covered comprehensively by a prior law, the two should be construed together unless a different legislative intent appears; the later being an exception or qualification of the prior only so far as they are repugnant.” The MMMA embraces part of a subject covered comprehensively by Article 7 of the PHC, i.e., the regulation of marijuana, and therefore these two acts should be “construed together” and the MMMA *324 viewed as an “exception” to Article 7 of the PHC “only so far as they are repugnant.” With regard to the meaning of “paraphernalia” in particular, there is nothing in either Article 7 of the PHC or the MMMA that suggests that they are “repugnant” in this regard.

 Relying on this Court’s decision in Woodard v Custer, 476 Mich 545, 563; 719 NW2d 842 (2006), in which we declined to apply the PHC’s definition of “board certified” to the Revised Judicature Act (RJA) because the Legislature specifically limited the use of the PHC’s definition of “board certified” to the PHC, the majority holds that we should not apply the PHC’s definition of “drug paraphernalia” to the MMMA because “the Legislature specifically limited the use of the Public Health Code’s definition of ‘drug paraphernalia’ to certain provisions of the Public Health Code.” However, the majority overlooks the critical distinction between Woodard and the instant case, which is that the statutes at issue in Woodard were not in. pari materia and therefore this Court was not obligated to read those statutes together as a whole. The statutes at issue in Woodard were the PHC and the RJA. “The Legislature’s purpose in enacting the Public Health Code was to protect the public health, safety, and welfare,” while “[i]ts purpose in enacting the Revised Judicature Act. . . was to set forth the organization and jurisdiction of the judiciary and to effect procedural improvements in civil and criminal actions,” which obviously is “unrelated to protecting the health, safety, and welfare of the general public.” Woodard, 476 Mich at 611-612 (Taylor, C.J., concurring). Given that these statutes were not in pari materia, this Court sensibly did not apply one statute’s definition of a term to an unrelated statute especially given that the former expressly stated that its definition was only to be applied to that statute. Here, however, the statutes at issue are in pari materia, and thus these statutes “must be read together as a whole.” Harper, 479 Mich at 621. This *325 specific approach is consistent with this Court’s precedent. For example, in Jennings v Southwood, 446 Mich 125, 137; 521 NW2d 230 (1994), this Court held that “[b]ecause these provisions should be read in pari materia, we deem it appropriate to use the definition of gross negligence as found in [MCL 691.1407] of the [Government Tort Liability Act (GTLA)], as the standard for gross negligence under the [Emergency Medical Services Act]” even though the Legislature specifically limited the use of the GTLA’s definition of gross negligence to the GTLA. Similarly, in Lindsey v Harper Hosp, 455 Mich 56, 65; 564 NW2d 861 (1997), this Court held that it was appropriate to rely on the definition of “personal representative” found in MCL 700.9(3) of the Revised Probate Code (RPC) for purposes of interpreting that same term in MCL 600.5852 of the RJA even though the Legislature specifically limited the use of the RPC’s definition of “personal representative” to the RPC because “[binder the rule of construction of statutes in pari materia, it is appropriate to harmonize statutory provisions that serve a common purpose when attempting to discern the intent of the Legislature.” This approach “rests on two sound principles: (1) that the body of the law should make sense, and (2) that it is the responsibility of the courts, within the permissible meanings of the text, to make it so.” Scalia & Garner, Reading Law: The Interpretation of Legal Texts (St Paul Thomson-West, 2012), p 252. “Statutes,” Justice Frankfurter once wrote, “cannot be read intelligently if the eye is closed to considerations evidenced in affiliated statutes.” Id. (citation and quotation marks omitted). It simply cannot be that “drug paraphernalia” means one thing under the PHC and something entirely different under the MMMA, which, as this Court has recognized, constitutes an “exception to the [PHC].” Bylsma, 493 Mich at 27.

 During oral argument, defendant’s own attorney recognized that “paraphernalia is defined as something that is specifically intended for the use or help in manufacture,” and stated, “I don’t think the post-it note is paraphernalia” because “the post-it note is not specifically designed to aid in the manufacture of marijuana.” Defendant’s attorney’s real concern in this case is the prosecutor’s reliance on these sticky notes as evidence that defendant aided and abetted her husband in manufacturing marijuana. However, that seems to he more of a “sufficiency of the evidence” question, which, as the majority recognizes, is not now before this Court.

 At the time this action arose, the definition of “medical use” was found in MCL 333.26423(e). This same definition is now found in MCL 333.26423(f).

 Contrary to the majority’s contention, I do not “conflatef] the more expansive definition of ‘medical use’ with the narrower definition of use and administration.” In fact, I agree with the majority that the statutory *328 definition of “medical use” “incorporatets] activities such as ‘[t]he transfer, delivery, and acquisition of marijuana.’ ” What the majority does not recognize, however, is that unlike the transfer of marijuana, which does not have to “relat[e] to the administration of marihuana” in order to fall within the definition of “medical use,” the transfer of paraphernalia does have to do so. See MCL 333.26423(e) (defining “medical use” as “the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition”) (emphasis added).

 Although the majority opinion recognizes that “defendant here was not merely assisting her husband with conduct involving the actual ingestion of marijuana” but was instead “assisting in the cultivation of marijuana” and that this does not constitute “assistance with ‘using’ or ‘administering’ marijuana,” the majority overlooks that this necessarily means that defendant did not provide the sticky notes to her husband “for purposes of a qualifying patient’s medical use of marihuana” and that, therefore, defendant is not entitled to immunity under MCL 333.26424(g).