*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 22, 2019

Plaintiff-Appellant,

v

No. 346451
Oakland Circuit Court
LC No. 2018-167560-AR

ROBERT EROLL WRIGHT,

Defendant-Appellee.

Before: SHAPIRO, P.J., and GLEICHER and SWARTZLE, JJ.

PER CURIAM.

This is a five-year-old operating-while-intoxicated case, which has twice wound its way through the district court and circuit court and landed before us. In 2015, the lower courts found no probable cause existed to administer a PBT test and therefore suppressed the evidence and dismissed the charge raised against defendant Robert Wright. This Court reversed, holding that "the totality of the evidence available" to the investigating troopers "was sufficient to establish probable cause—and, by extension, any lesser standard—that" Wright was operating while intoxicated, supporting the provision of a PBT test. *People v Wright*, unpublished per curiam opinion of the Court of Appeals, issued March 31, 2016 (Docket No. 329023), slip op at 5 (*Wright I*).

On remand, Wright contended that the troopers failed to follow proper protocol in administering the PBT and that absent the test results, the troopers lacked probable cause to arrest. The lower courts agreed, suppressed the evidence, and dismissed the charge. The prosecutor again appeals, contending that even absent the PBT results, the troopers had probable cause to arrest Wright. Evidence that Wright was intoxicated emerged shortly after he was stopped, supporting probable cause for his arrest. Accordingly, we must reverse and remand for further proceedings.

## I. BACKGROUND

At approximately 3:30 a.m. on May 23, 2014, Michigan State Police Troopers Angelo Brown and Roger Haddad effectuated a traffic stop of Wright's vehicle because his license plate light was out. This was a civil infraction for "defective equipment." A report prepared shortly

after Wright's arrest described that "Wright exhibited glassy, blood shot eyes, odor of intoxication on breath, confusion, slow movement and was having a hard time comprehending simple instruction."

At the 2015 district court hearing on Wright's motion to suppress the evidence against him, Trooper Brown testified that he and his partner never observed Wright driving erratically; they pulled him over simply because of the illumination issue. As Brown approached the vehicle, he observed Wright putting his right hand under his right thigh. Concerned that Wright might have a weapon, Brown ordered Wright to "show me his hands." Wright disregarded two commands and only placed his hands on the steering wheel when Brown pulled out his gun. Brown admitted that he was not certain whether the vehicle's windows were open, but he "believe[d]" at least the driver-side front window was rolled down. In any event, Brown stated that he "was yelling" and was "[a]bsolutely" "loud enough" for Wright to hear. This was especially true as Wright's radio was not on.

Once he received the all clear from his partner, Trooper Brown walked from the back of the car toward the driver-side front window. He "detected an odor of intoxicants and burnt marijuana." "[T]he odor of burnt marijuana" supplied grounds to arrest Wright for "misdemeanor use or possession," Brown testified, and he therefore ordered Wright to exit the vehicle. Brown placed Wright in handcuffs and asked if Wright had consumed any alcohol that night. Wright indicated that "he had three (3) shots of" cognac. When asked at the hearing if Wright was under arrest once he was handcuffed, Brown indicated that Wright was "being retained . . . so I can further investigate what was in the vehicle or on him."

Trooper Haddad similarly testified in 2015 that Wright did not immediately comply with orders to show his hands. Instead he "fumbl[ed] around on his side, and finally he did produce his wallet." Trooper Haddad could also smell burnt marijuana and alcohol from his position on the passenger side of the vehicle. The troopers did not ask Wright to perform any field sobriety tests. However, at some point, they administered a PBT, which revealed a BAC of 0.176. As a result, the prosecution charged Wright with operating while impaired in violation of MCL 257.625(1)(b).[1]

---

[1] At the time Wright was charged, MCL 257.625(1)(b) provided:

> (1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. As used in this section, "operating while intoxicated" means any of the following:
>
> * * *
>
> (b) The person has an alcohol content of 0.08 grams or more . . . per 210 liters of breath . . . .

Wright filed a motion to suppress the PBT results and dismiss the charges against him, arguing that the troopers lacked "reasonable cause" to administer the test.[2] The district court granted the motion, finding a lack of probable cause where no field sobriety tests were conducted and neither trooper observed Wright driving in an erratic or impaired manner. The prosecutor appealed to the circuit court, which affirmed. The prosecutor then appealed to this Court, which reversed and remanded for continued proceedings. In doing so, this Court reasoned:

> The parties dispute whether the phrase "reasonable cause" used in the statute is the equivalent of "probable cause," or whether it is the equivalent of a lesser standard, such as reasonable suspicion. We need not weigh in on this matter because we find that the totality of the evidence available to Brown and Haddad was sufficient to establish probable cause—and, by extension, any lesser standard—that [Wright] was operating a motor vehicle and that the consumption of alcohol may have affected his ability to do so. See MCL 257.625a(2). Hence, regardless of whether "reasonable cause" is the equivalent of "probable cause," we find that the totality of the circumstances present to Brown and Haddad was sufficient under MCL 257.625a(2) to require a PBT in this case.
>
> In finding that reasonable cause existed, we review the totality of the factors present, but focus primarily on three pertinent factors. The first of which is that, as Brown and Haddad approached the car, Brown twice shouted to [Wright] to show his hands; [Wright] did not immediately comply, which Brown interpreted as a "slow" reaction to his commands. Although [Wright] later complied with the officers' subsequent commands, it appears undisputed that he did not initially comply with Brown's loud verbal commands. Also, according to Haddad, [Wright] was "fumbling" and was slow in producing his wallet. This could suggest evidence of impairment. The circuit court minimized [Wright's] initial non-compliance by pointing out that he complied with the majority of the officers' commands; however, this ignores that [Wright] did not initially comply, that Brown found his reactions to be "slow," and that Haddad testified that [Wright] was "fumbling" and slow to produce his wallet, an activity that is not altogether difficult or extraordinary for someone who is not impaired.
>
> The second factor we find to be significant in this case is that both officers detected the odor of burnt marijuana and intoxicants emanating from [Wright's] vehicle. [Wright] was the only occupant of the vehicle at the time, and it was reasonable for the officers to conclude that he had some connection with these odors. As to the final pertinent factor—and perhaps the piece that tied everything

---

[2] At the time of Wright's arrest, MCL 257.625a(2) provided that an officer "who has reasonable cause to believe that a person was operating a vehicle . . . and that the person by the consumption of alcoholic liquor, a controlled substance, or other intoxicating substance or a combination of them may have affected his or her ability to operate a vehicle . . . may require the person to submit to a preliminary chemical breath analysis."

-3-

together—[Wright] admitted to having consumed three shots of cognac. This confirmed that [Wright] was likely connected to the odor of intoxicants and that he had been drinking that evening. Further, it made it likely that he had been drinking recently enough for the odor of intoxicating liquor to continue to emanate from the automobile at the time of the traffic stop. And, [Wright] confirmed that he had consumed multiple drinks, which provided further evidence of possible impairment.

In sum, we hold that the number of drinks, combined with the odor of intoxicants, as well as [Wright's] initial failure to comply with two loud verbal commands—wherein the delay was sufficiently concerning so as to cause Haddad to draw his service weapon and retreat out of concern over the reason for such delay—was enough to give the officers sufficient cause to believe that [Wright], "by the consumption of alcoholic liquor may have affected his . . . ability to operate a vehicle[.]" See MCL 257.625a(2). The statute does not, as the district court and circuit court concluded, require actual evidence of impairment, just that the person, "by the consumption of alcoholic liquor may have affected his or her ability to operate a vehicle[.]" Although we do not believe that any of the facts of this case would, standing alone, have authorized the officers to require a PBT, we hold that, when viewed together, there was sufficient evidence to constitute probable cause—or some lesser standard.

In so concluding, we note that this is a close case; however, it is one that did not need to be this close. Although the finding of reasonable cause does not require roadside sobriety tests, had the officers performed those tests instead of immediately arresting defendant, there could have been a much stronger case for reasonable cause under MCL 257.625a(2). Nevertheless, our preferences do not amount to constitutional or statutory requirements, and we believe that the facts of this case gave the officers enough information, based on the limited and somewhat perfunctory investigation, to satisfy the reasonable cause requirement of MCL 257.625a(2). [*Wright I*, slip op at 5-7.]

On remand, Wright filed a new motion to suppress the PBT evidence, this time arguing that the troopers failed to follow protocol in administering the test. The district court agreed and suppressed the PBT evidence. The prosecutor did not challenge that ruling on appeal to the circuit court and does not do so before this Court, either, and we need not consider it further. However, the district court also dismissed the charge against Wright, concluding that without the PBT results, there was insufficient information to form probable cause to arrest.

The district court conducted a new evidentiary hearing before suppressing the evidence and dismissing the charge. The court first took notice of the 2015 hearing. Trooper Haddad then recounted that Wright "was immediately placed in handcuffs" upon his exiting the vehicle "due to the odor of intoxicating substances and marijuana coming from the vehicle, along with arag [sic] movements." The prosecutor asked Trooper Brown for the first time to describe Wright's physical appearance during the stop. Brown described that Wright's eyes were "bloodshot" and "watery". He also reiterated that Wright's movements were slow and that he could not comply "with basic instructions." Specifically, Wright "disregarded two of my commands to" "place his

-4-

hands on the steering" wheel. Brown again indicated that he could not recall whether any windows were open on the vehicle. He could no longer remember if the radio was on. However, he did remember that he smelled the odor of burnt marijuana coming from inside the vehicle.

As noted, the district court suppressed the PBT results following the hearing. The district court then dismissed the charge against Wright because "without the PBT, the officers lacked probable cause to arrest Mr. Wright." The prosecutor again appealed to the circuit court, which again affirmed. The circuit court agreed that probable cause to arrest was lacking as

> [t]here was no evidence that [Wright's] ability to operate his vehicle was affected. Neither trooper observed any erratic behavior from [Wright]. There was no testimony regarding [Wright's] failure of a field sobriety test. There was no testimony regarding when [Wright] consumed the three shots of cognac in relation to his operation of the vehicle. Both troopers testified that other than [Wright's] failure to immediately place his hands on the steering wheel, [Wright] was perfectly compliant with all orders, non-combative and non-aggressive. Taken as a whole, the testimony from the troopers provides no evidence that [Wright] was impaired or failed to comply with their orders.

The circuit court acknowledged the troopers' testimony "that they detected the smell of marijuana from the vehicle," but found that absent a vehicle search that uncovered actual marijuana, there was no ground for arrest.

## II. ANALYSIS

In the current appeal before this Court, the prosecutor does not challenge the suppression of the PBT evidence. Rather, this time around, the prosecutor challenges only the dismissal of the OWI charge against Wright based on the absence of probable cause. "We review a trial court's decision on a motion to dismiss charges against a defendant for an abuse of discretion. A trial court may be said to have abused its discretion only when its decision falls outside the range of principled outcomes." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012).

Generally, a warrant to arrest is required, but this requirement may be dispensed with in the face of probable cause and a warrant exception. *People v Wood*, 321 Mich App 415, 423; 910 NW2d 364 (2017). In order to arrest a suspect, the "arresting officer must possess information demonstrating probable cause to believe that an offense has occurred and that the defendant committed it. Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *People v Lyon*, 227 Mich App 599, 611; 577 NW2d 124 (1998). "The existence of probable cause is determined by the totality of the circumstances." *People v Nguyen*, 305 Mich App 740, 752; 854 NW2d 223 (2014). There is a distinction between probable cause for an arrest and for a bindover:

> [T]he arrest standard looks only to the probability that the person committed the crime as established at the time of the arrest, while the preliminary hearing looks both to that probability at the time of the preliminary hearing and to the probability that the government will be able to establish guilt at trial. [*People v Cohen*, 294 Mich App 70, 76; 816 NW2d 474 (2011) (alteration in original), quoting LaFave & Israel, Criminal Procedure (2d ed, 1992), § 14.3, pp 668-669.]

In considering the lower court's analysis in this regard, we review for clear error its underlying findings of fact. *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012).

As aptly noted by this Court in *Wright I*, slip op at 6, on the similar issue of the cause underlying the administration of a PBT, this matter represents "a close case." The facts before the troopers before they administered the PBT were that (1) Wright was slow to comply with Brown's command to show his hands, (2) Wright had difficulty removing his wallet from his pocket and extracting his license, (3) the interior of the vehicle smelled like alcohol and burnt marijuana, (4) Wright was alone inside the vehicle, (5) it was 3:30 a.m., and (6) Wright had watery, bloodshot eyes. In judging this close case, it also important to note that (1) the officers did not observe Wright driving erratically, (2) the officers conducted no field sobriety tests, and (3) the lower courts' unchallenged rulings eliminated the PBT evidence.

The Michigan Supreme Court and this Court have repeatedly held that the smell of alcohol or burnt marijuana provide probable cause to conduct a search. See, e.g., *People v Kazmierczak*, 461 Mich 411, 421; 605 NW2d 667 (2000); *People v Hilber*, 403 Mich 312, 321; 269 NW2d 159 (1978), overruled in part on other grounds by *Kazmierczak*; *People v Anthony*, ___ Mich App ___; ___ NW2d ___ (Docket No. 337793, issued January 22, 2019), slip op at 9; *People v Rizzo*, 243 Mich 151, 152; 622 NW2d 319 (2000). And this Court has held that "if the information contained in the affidavit regarding events prior to the entry and arrest is sufficient to establish probable cause for the search warrant, then it also is sufficient to establish probable cause for the arrest." *People v Coleman*, 100 Mich App 587, 590 n 1; 300 NW2d 329 (1980). In *Hilber*, 403 Mich at 421, the Supreme Court noted that "the odor of burnt marijuana may provide probable cause for an arrest or search. . . . [T]he odor of burned marijuana, in some circumstances, may provide reason to believe that a particular person smoked it (probable cause for arrest). . . ."

Here, the troopers smelled alcohol and burnt marijuana. Wright was alone in the vehicle and behind the wheel. The odors detected therefore suggested not only that Wright had used two intoxicating substances, but also that he operated a vehicle after doing so. Added to this initial assessment, the troopers noted that Wright used slow, fumbling movements to remove his wallet from his pocket. Despite Brown's loud commands, Wright was slow to process and place his hands on the steering wheel. The troopers noted in the post-incident report that Wright's eyes were watery and bloodshot, another telltale sign of intoxication.[3] Given the early morning hour,

_____

[3] The Oregon Liquor Control Commission has developed a list of "50 signs of visible intoxication," which include "[b]loodshot, glassy, or watery eyes," "[o]dor of alcohol, marijuana or chemicals," clumsiness, disorientation, and having "[s]low response to questions or

-6-

Wright's demeanor, and the odor of intoxicants, an officer using "reasonable caution" could honestly and reasonably believe that Wright had operated his vehicle while intoxicated. This Court previously thoroughly reviewed the evidence and concluded that it was sufficient to justify the administration of a PBT. The information before the troopers was sufficient not only to conduct such a search, but it also supported placing Wright under arrest. We agree with the panel in *Wright I* that ideally field sobriety tests should have been conducted, but also agree that such hurdles are not mandatory under the OWI statute. The district and circuit courts thereby abused their discretion in dismissing the OWI charge against Wright.

We reverse and remand for further proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle

---

comments." See Oregon Liquor Control Commission, *50 Signs of Visible Intoxication*, available at <https://www.oregon.gov/olcc/docs/publications/50_signs_visible_intoxication.pdf> (accessed August 9, 2019).